WILL OF STEPHENS: MORRISON and others, by guardian *ad litem,* Appellants, vs. HALL, Respondent.

*October 13—November 10, 1931.*

For the appellants there was a brief by *W. H. Farnsworth,* guardian *ad litem,* and *Grady, Farnsworth & Walker* of counsel, all of Portage, and oral argument by *Mr. Farnsworth.*

For the respondent Eloise Hall there was a brief by *Rogers & Owens* of Portage, and oral argument by *Harlan B. Rogers.*

NELSON, J. The vital thing to be ascertained from the will is the intention of the testator. The will appears to be the result of careful thought and deliberation. It first makes provision for the children of his partner and for all of his heirs at law who were the natural objects of his bounty. He then bequeaths substantial sums to several persons unrelated to him and to several fraternal and civic associations. Ig-

noring the residuary clause, paragraph thirteenth, the will disposed of less than one half of his estate. It is a will commendable for its apparent fairness and generous benefactions. It was apparently drawn by himself on or about the 12th day of September, 1929—a little over eight months prior to his death.

The appellants, by their guardian *ad litem*, earnestly contend that paragraph sixth is unambiguous and clearly expresses an intent on the part of the testator wholly to exclude Eloise Hall as a beneficiary under his will.

Paragraph sixth, standing by itself, alone and apart from the other provisions of the will, is without doubt subject to such a construction. But we must look to the language of the whole will and read it in the light of the circumstances surrounding the testator, in order to discover what was apparently in his mind at the time he made it, and thus ascertain his intention. *Donges's Estate,* 103 Wis. 497, 79 N. W. 786; *Ohse v. Miller,* 137 Wis. 474, 119 N. W. 93; *Maxcy v. Oshkosh,* 144 Wis. 238, 128 N. W. 899, 1138; *Flint v. Wisconsin Trust Co.* 151 Wis. 231, 138 N. W. 629; *Will of Ehlers,* 155 Wis. 46, 143 N. W. 1050; *Will of Smith,* 165 Wis. 207, 161 N. W. 749; *Will of Elmore,* 165 Wis. 266, 162 N. W. 438; *Will of Read,* 180 Wis. 497, 193 N. W. 382. The respondent relies upon the rule established by the foregoing cases and contends that the whole will, interpreted according to the ordinary meaning of the language used and in the light of the circumstances surrounding the testator, discloses beyond a fair doubt that he intended only to exclude Eloise Hall from participating as a specific legatee in order to put her brother and sisters and the other nephews and nieces on a basis of equality with her.

We conclude from a careful examination of the whole will, in connection with the surrounding circumstances, that it should be construed as contended for by the respondent and as construed by the county court, and that it was the

intention of the testator to exclude Eloise Hall only as a specific legatee and not as a residuary legatee and devisee. No other reasonable and satisfactory explanation of the studied plan and detail found in the various bequests to all of his nephews and nieces can be suggested. In order that we may ascertain the intention of the testator we must place ourselves in his position at the time he was about to draft his will. He apparently first thought of the children of his partner whom he wished to treat equally with his nephews and nieces. He bequeathed to each of them the sum of $3,000. We may properly assume that his next thought was of his twelve nephews and nieces, his only heirs at law. He considered them according to his scheme or plan, family by family. He bequeathed to his niece and nephews, "children of Mr. and Mrs. C. W. Johnson," the sum of $3,000. Then his mind proceeded to the children of his deceased brother, W. J. Stephens, who were in fact his nephew and nieces but who were referred to as "the children of my deceased brother." To each of them he bequeathed the sum of $3,000. And then he reached for testamentary consideration the members of the Kingston family. Here again he referred to his nieces and nephew as "the children of Mr. and Mrs. W. J. Kingston, deceased," to whom he gave the sum of $3,000 each. Eloise Hall is a Kingston and daughter of Mr. and Mrs. W. J. Kingston. Because he had theretofore "given her a sum of money out of my (his) estate equal in amount to her share as compared with her brother and sisters," he gave her "nothing" and said: "I will therefore give her no more." With the completion of paragraph sixth of the will the nephews and nieces and the children of his partner were all taken care of so far as the specific bequests were concerned. He then proceeded to make provision for certain of his friends, his attorney, the Hillside Cemetery Association, the Knights of Pythias for the purpose of endowing a room in the hospital, and the Columbus Park Association.

That it was the desire of the testator to equalize the sum theretofore received by Eloise Hall with the shares given by him to the others seems plain. When we look for the apparent underlying purpose of the testator in making the numerous specific bequests of $3,000 to each of the Morrison children and to each of the nephews and nieces, excepting Eloise Hall, we do not find it unless he was thereby attempting to establish a parity or equality between one who had already received a share of the estate with others who had received nothing. Otherwise he could simply have made specific bequests to those mentioned in paragraphs seventh to tenth of the will and then made the Morrison children and his nephews and nieces, excepting Eloise Hall, equal sharers in his residuary estate. It is evident that the scheme of his will involved some such plan or purpose. It is reasonable to assume that the testator had a reasonably accurate idea as to the amount of money which Eloise Hall had theretofore been given. The record is silent as to the amount of such sum, but it seems quite clear that the sum which the testator had in mind was the substantial equivalent of the sum of $3,000 given by him to each of her sisters and brother and to the other nephews and nieces. Manifestly at the time he made his will he did not know and could not know what his residuary estate would amount to at the date of his death when his will would become effective. He therefore could not look forward to the uncertain date of death and calculate, with any certainty, the value of his residuary estate at the time of his decease, so that he could not intelligently compare the amount theretofore given to Eloise Hall with the amount which each of her sisters and brother would ultimately receive from his estate. He might die leaving little or no property to which his residuary clause would apply. He might accumulate more property. He might double his estate. It seems unreasonable to assume that the testator, having in mind a reasonably definite sum which he had theretofore given to Eloise, would contemplate

equalizing that sum by amounts bequeathed and devised to her brother and sisters which necessarily would be uncertain. We do not think that the mind of the deceased so operated. It is more reasonable to conclude that the testator, at the time he made his will, had in mind a rather definite sum which he had given to Eloise Hall which would be equalized by a bequest of $3,000 to each of her sisters and brother. Having thus equalized the shares of all of his nephews and nieces, he provided in the thirteenth paragraph of his will as follows: "All the rest, residue, and remainder of my estate, I give, devise, and bequeath to all of my nieces and nephews aforesaid, and also an equal share in such residue and remainder to the children of Mr. and Mrs. E. J. Morrison, the same to be divided among them share and share alike." The language of the residuary clause is clear and unambiguous. It includes *all* of his nephews and nieces aforesaid as residuary legatees and devisees. The language of the residuary clause is absolutely comprehensive and plainly includes Eloise Hall—one of his "nephews and nieces aforesaid." Had he intended to exclude Eloise Hall from his bounty, it obviously would have been a simple matter for him to have said in his residuary clause "all of my nieces and nephews aforesaid excepting said Eloise Hall."

We need not discuss the various canons of construction which are at times invoked in construing wills, for the reason that, as we view this will, we need no canon of construction except the cardinal or primary one to which all others yield and are subordinate, namely: that the intention of the testator is to be sought in all of the testator's language and, when ascertained, must prevail.

*By the Court.*—Judgment affirmed.

FAIRCHILD, J. (*dissenting*). In dissenting from the opinion filed in this case I do so because the intention of the tes-

tator as to the exclusion of Eloise Hall from among the beneficiaries is made to appear so plainly in paragraph sixth of the will, quoted in the majority opinion, that it shoulders itself through the whole will.

None of the many rules that have been devised to assist in the discovery of testator's intent should be permitted to interfere with the manifest intention disclosed by the will itself, and no rule of construction is more effective to discover the testator's intention than that which requires that words shall be given their plain and ordinary meaning. The words used by the testator in this instance are final and comprehensive. He has just given in paragraphs preceding certain bequests to the Morrison children and to certain of his nieces and nephews, and he follows these bequests with the statement in which he gives emphatically his reason for excluding Mrs. Hall from among those named.

In reading this will we are not to resort to judicial construction merely because there is a challenge of its meaning. As said in *Benner v. Mauer,* 133 Wis. 325, 330, 113 N. W. 663:

"Often obscurity claimed to exist in such an instrument is but the mere creation of the mind of the claimant, not one originating with the maker of the paper. The first duty in examining a will to discover its purpose is to proceed as if it was unambiguously expressed. If, taking the will as a whole in the light of the subjects with which it deals, its meaning is plain, there is no legitimate room for judicial construction, and none should be attempted."

The use by the testator of the word "nothing" in paragraph sixth is as definite a declaration as could well be devised to indicate that he does not intend this niece to share in his bounty: "I have heretofore given her a sum of money out of *my estate* equal in amount to her share as compared with her brother and sisters and *I will therefore give her no more.*" In framing this paragraph sixth he refers to his estate and to this particular niece and declares that he has

given her already out of his estate an amount which is her full share when compared with the shares which her brother and sisters are taking now who have never had anything from him before.

By this clause he has so plainly eliminated her from any participation in the disposition of his estate as to repel any inference that might otherwise arise from the more general language of the residuary clause of an intention that she share the residuary estate.

It is urged as a matter of psychology that the testator's mind was wholly centered upon the arrangement of the distribution of the $3,000 portions of his estate to his nieces and nephews, and that paragraph sixth, which has been sufficiently quoted, was inserted for the purpose of showing why he had not mentioned Eloise Hall as one to receive $3,000. In support of this theory there is suggested the likelihood of his having given to Mrs. Hall for her musical education the sum of $3,000, and to equalize matters between Mrs. Hall and her brother and sisters and the other nieces and nephews he was giving them each $3,000. This contention overlooks the other suggestion that the standard for the $3,000 bequests may have arisen out of the testator's bequests of $3,000 in the first paragraphs of his will to the Morrison children. The testator was a lawyer familiar with the drafting of wills and we must assume that at the time of his writing the sixth paragraph and the use therein of the words excluding Mrs. Hall from among his beneficiaries, with a statement that he devised her nothing and that he did not intend to give her any more, that he knew he was going to include a residuary clause, and it seems to me that he made it plain who were to benefit by that residuary clause and that he there used the words, "all my nieces and nephews aforesaid," with reference to those nieces and nephews who were to share in his bounty as already indicated by him.

We are not warranted in reading into this will language limiting the full scope and meaning of the words used in paragraph sixth, or in reading into a group plainly relating to nieces and nephews to whom something has been given the name of Eloise Hall.

The rules followed by the majority opinion tend more to negative the general intention of the testator than to promote it. 2 Schouler, Wills (6th ed.) § 859, is authority for the doctrine that the plain and unambiguous words of the will must prevail and cannot be controlled or qualified by any conjectural or doubtful construction growing out of the situation, circumstances, or condition of the testator, his property, or the natural objects of his bounty. The intent of the testator, in this instance, to accomplish the result suggested in paragraph sixth appears from the words there used, and there is no occasion for construction to conflict with what appears to be the plain meaning thereof.

I am authorized to state that Mr. Justice FOWLER and Mr. Justice WICKHEM concur in this dissent.