ESTATE OF FRITSCH: FRITSCH and another, Appellants, vs. WEPKING, Executor-Trustee, and another, Respondents.*

*May 8—June 15, 1951.*

* Motion for rehearing denied, with $25 costs, on September 11, 1951.

296

*J. Charles Pile* of Dodgeville, for the appellant George Fritsch, Jr., and *George J. Larkin* of Dodgeville, for the appellant Henry Fritsch.

For the respondents there was a brief by *Jones & Hamilton* of Dodgeville, for Elsie Day, and by *C. H. Knudson* of Dodgeville, for Frank Wepking, and oral argument by *Mr. Frank O. Hamilton* and *Mr. Knudson.*

GEHL, J. We have recently held in a series of cases that the construction placed upon the provisions of a will by judgment or order is a finality, and that the court may not entertain a later petition for the construction of the will. *Estate of Austin,* 258 Wis. 578, 46 N. W. (2d) 861; *Estate of White,* 256 Wis. 467, 41 N. W. (2d) 776; *Estate of Larson,* 257 Wis. 579, 44 N. W. (2d) 535; and *Estate of Lenahan,* 258 Wis. 404, 46 N. W. (2d) 352. The question then is: Was the will construed in the judgment of December 12, 1939? If it was, there was no occasion for its construction upon the petition of the two sons filed on August 22, 1950, which, in effect, sought construction.

The court's authority to construe the will in the judgment assigning the estate is not challenged. In assigning an estate the court not only has the power to construe a will—it cannot order an assignment without such construction. *Estate of Garbade,* 187 Wis. 105, 203 N. W. 748.

It is true that the decretive portion of the judgment does not in express terms limit the time within which the sons might exercise the options granted by the will. But the decree in its decretive portion does contain a direction for the distribution of all the remaining estate "in accordance with the terms of said will." It should be given effect according to the court's intention clearly expressed in the quoted finding, that the respective sons "should have the privilege of purchasing the respective farms . . . during the lifetime of said Thatie Fritsch," and the judgment must be read as though the court had added to the sentence of the decree the words, "as herein construed." To so conclude is to

take into consideration all of the terms of the decree, as we are required to do in this case. 49 C. J. S., Judgments, p. 862, sec. 436, 30 Am. Jur., Judgments, p. 834, sec. 31.

It is not contended that the court's expression contained in the pertinent finding, that the sons "should have the privilege of purchasing the respective farms . . . during the lifetime of said Thatie Fritsch," was perfunctorily made. On the contrary, a deliberate purpose to give construction to an ambiguous provision in the will is clearly indicated. It is more than a "mere recitation of how the court is going to construe the will," as it was in *Will of Corse,* 195 Wis. 88, 217 N. W. 726; it is, in fact, a construction which must be carried into the decretive portion of the judgment.

The construction placed upon the will by the terms of the judgment assigning the estate is not open to further construction; it is not ambiguous. It clearly and definitely limits the time within which the options might be exercised to the period of the life of the widow and implies the exclusion of any additional period. *Expressio unius est exclusio alterius.*

There is no clear distinction between the options granted by the terms of the will, as construed by the court, and that granted in the ordinary option agreement. In the case of the latter, time is generally regarded as of the essence of the contract. 12 Am. Jur., Contracts, p. 867, sec. 312. The reason for the rule applies here as it does in the case of the ordinary option agreement. It is stated in *Waterman v. Banks,* 144 U. S. 394, 403, 12 Sup. Ct. 646, 36 L. Ed. 479:

"The court regards it as the case of a condition on the performance of which the party performing it is entitled to a certain benefit; but in order to obtain such benefit he must perform the condition strictly. Therefore if there be a day fixed for its performance, the lapse of that day without its being performed prevents him from claiming the benefit."

We may not be concerned with the question whether the construction placed upon the will by the judgment of Decem-

ber 12, 1939, is the correct one. If we were disposed to disagree with the construction we might not even then disturb it. It is final and, not having been appealed from, must stand. *Estate of Bosse,* 246 Wis. 252, 16 N. W. (2d) 832.

We conclude, therefore, that there has been a final construction of the will, and that, applying such construction, the time within which the two sons might have exercised the option expired with the death of Thatie Fritsch.

Appellants attack that part of the order of August 1, 1950, authorizing a sale of the real estate by the surviving trustee upon the ground that it was made without notice. The will named George Fritsch, Jr., and Frank Wepking executors and trustees and authorized them to dispose of testator's real estate. Since such power was given there was no need of an application to the court for authority therefor, and the failure to give notice of hearing is not fatal.

*By the Court.*—Judgment affirmed.

FAIRCHILD, J. (*dissenting*). The majority opinion refers to the contents of the judgment assigning the estate on December 12, 1939, and quotes the following as if it were a part of the judgment:

"That during the lifetime of said Thatie Fritsch, unless said sons purchase their respective farms meanwhile, said sons shall have the privilege of leasing said farms on the terms provided by the said will, to wit: Said George Fritsch to pay not to exceed $720 annually plus taxes and necessary repairs, and said Henry Fritsch to pay not to exceed $480 per year plus taxes and necessary repairs. . . ."

But whether it is or is not a part of the judgment of December 12, 1939, by reason of an attempted amendment, it does not appear to me that there is any occasion for questioning the rule that where there has been a construction of a clause in a will, and that construction embodied in a judgment, that that judgment becomes final. A portion of the will embodied in the judgment with which we are con-

cerned in this case was not construed in the judgment of December 12, 1939, and the terms of the judgment are such that the petitioners have a right to have the portion of the will relating to their acquiring the property after the death of their mother considered. The majority opinion says: "It is not contended that the court's expression contained in the pertinent finding, that the sons 'should have the privilege of purchasing the respective farms . . . during the lifetime of said Thatie Fritsch,' was perfunctorily made." But on August 29, 1950, at the time of the judgment treating with this undetermined and ambiguous portion of the will which is now before us, there was then no direct requirement in the will or any judicial interpretation of the language of the will holding that the right to purchase after the death of the widow did not exist. In fact, it was in effect so ruled in the matter now before us, and we quote from the trial court's opinion of record with relation to the judgment of December 12, 1939, as follows: "A consideration of the record in this case in the light of the authorities cited by counsel convinces the court that the question now present, namely, whether the deceased intended by his will to limit the option he gave the petitioners to purchase the real estate to the lifetime of the widow was not passed on by the court in its effort to construe the will on December 12 or December 19, 1939. Therefore, argument as to the effectiveness or meaning of such construction is irrelevant; and under the stipulation of the parties it is the duty of the court to pass on that question in this proceeding." And it appears in the judgment that the purported order "attempting to construe the will on December 19, 1939, is void." In that order there was an attempt to amend the final judgment of December 12, 1939. That order (December 19, 1939) was expressly declared in the present judgment to be void. It had been based on a petition dated December 19, 1939, reciting "that the judgment allowing final account and assigning estate in the

above-entitled matter was signed by the Hon. James E. O'Neill and filed December 12, 1939;" and

"That in the findings of fact of said judgment certain findings were made in respect to the construction of the will of said George Fritsch, deceased, as set out following the copy of the will on page 2 of paragraph 4A of said findings of fact;" and

"That through an oversight these findings of fact were not incorporated in the judgment, although at the time of said hearing on the final account the court did actually construe the said will of George Fritsch, deceased, as set out in the findings of fact heretofore mentioned." It is this order that was held to be void.

The majority opinion cites the case of *Estate of Garbade,* 187 Wis. 105, 203 N. W. 748, to the effect that "in assigning an estate the court not only has the power to construe a will—it cannot order an assignment without such construction." As I read the case, it is authority to the effect described in the headnotes as follows:

"1. Proceedings for the construction of wills without personal service on interested minors as provided in subs. (1) and (4), sec. 2636, and sec. 3791a, Stats., are not approved, notwithstanding the appearance of the guardian *ad litem* of the minors.

"2. A will *may* be construed in a final decree allowing a final account, determining the inheritance tax, and assigning the residue of the estate.

"3. . . . the final decree is sustained in the absence of anything in the record from which it might be inferred that the court did not give the will full and careful consideration in rendering its final decree."

The rights claimed by petitioners to which we are to give attention on this appeal are based on the clauses particularly referred to herein. There is no provision for an out-and-out purchase of the farms by the sons until after the death of their mother. They take under a devise with

a provision binding them to leave the value of this devise in the estate so long as the widow lives and remains unmarried. The construction attempted to be inserted December 19th in the judgment of December 12, 1939, treated only with the question of the *right to lease or to purchase* while the mother lived and granted them the right to purchase before the mother died. However, we must not overlook that this attempt was held to be abortive and an invalid proceeding. No evidence was taken with relation to why or how it came about that "Exhibit 4A" containing the language now claimed by the majority to be a construction was annexed later to the judgment of December 12, 1939. The court below emphatically ruled, in recognizing the stipulation of the parties, that there had been no such construction validly made. That is the effect of the judgment we are considering. Therefore the right to acquire by the sons after their mother's death was not considered until the proceedings of August, 1950.

The sons acted in accordance with the provisions in the will, and during the widowhood of their mother left the amount they were to pay as provided in the devise in the estate, so that the income thereof would be available for the widow in accordance with the provisions of the will now under review. They acquired their rights by a devise under which they were bound to leave the limited amounts in the control of the estate during the life of the widow.

The trial court proceeded to construe the will for the first time. The rule followed in this particular by the learned trial judge has been firmly established in this jurisdiction. Only when a final judgment or order (see *Estate of Bosse,* 246 Wis. 252, 16 N. W. (2d) 832) has in fact construed a particular provision of the will is that provision so construed binding on all parties in interest who had notice of the application to enter a final judgment. As held in *Will of Inbusch,* 193 Wis. 10, 212 N. W. 634, when the final judgment does not construe a provision and instead

incorporates the language of the will without attempting to determine its meaning, there is nothing presented amounting to *"res adjudicata,"* and there is no bar to a court construing an unconstrued portion of the will when rights thereunder are to be determined. *Will of Levy,* 234 Wis. 31, 289 N. W. 666, 290 N. W. 613. See also *Will of Yates,* ante, p. 263, 48 N. W. (2d) 601. The situation as it has developed requires us to turn to the language used by the testator in his last will.

After the death of the mother, the appellants, Henry Fritsch and George Fritsch, Jr., gave notice of their intention to exercise the right bequeathed and devised to them in the will of their father. They then declared themselves ready to purchase the respective tracts of land described in the will and on the terms therein set forth. The executor and trustee declined to recognize their rights to purchase under the option provisions of the will, and Henry Fritsch and George Fritsch, Jr., petitioned the court to direct the executor and trustee to convey to them by sufficient instruments of conveyance the real estate for the consideration provided by the terms of the will.

The court denied the petition, dismissed the proceedings, and by its judgment then for the first time declared that the provision of the will with relation to the devise to the sons to exercise the right of acquiring the land under the will was lost by them because they did not purchase the farms before the death of their mother. The devise is described in the statement of facts.

This appeal is from a judgment construing an unconstrued portion of the will, and therefore the question now presented is as to what the language used by the testator in his will, now a part of the judgment, actually meant or provided with relation to the so-called options claimed by the two sons. The appellants were entitled to assert their rights and to seek the relief asked for unless they were foreclosed of their rights by a judicial construction already

made. The purpose of the testator is disclosed in his carefully laid-out plan which appears in the will. There was a provision for occupying the farms during the life of the widow, and an additional or continuing right to acquire the farms after the death of the widow. When that intention of a testator appears, it is the court's duty to proceed as if the purpose was unambiguously expressed. *Will of Stephens,* 206 Wis. 16, 19, 238 N. W. 900. In the language of the whole will, read in the light of the circumstances surrounding the testator, we discover what was very evidently in his mind at the time he made his last will and testament. When the subject matter of a devise or bequest is presented so as to disclose the design of protecting a right in a comprehensive plan, and the provisions clearly indicate the real intention of the testator, his intention must be carried out, for he has accomplished his purpose and has established a sufficient devise or bequest. This follows because a construction is controlled by the language of the whole will, and this must be "read in the light of the circumstances surrounding the testator" so as "to discover what was apparently in his mind at the time he made it, and thus ascertain his intention." *Will of Stephens, supra.*

The circumstances surrounding the testator included the manifest interest in all the members of his family, of course, and his evident desire to provide for his heirs and legatees, together with the fact that two of the testator's sons were interested in and were working farms belonging to him, the income from which was to be used in a certain way. In his will he provides for their acquiring the title to those particular premises. In the will the testator arranges matters so that there will be a definite amount realized each year as income for his widow, dependent upon the sons entering into the arrangement. They could not exercise an independent and complete power of purchase until after their mother's death, for the prospective income was deeply embodied in the plan. The price at which each son is to

have the opportunity of acquiring the farm designed for him is fixed with relation to the support of the widow. Each farm is to be maintained by the son designated, and he is the one who is to pay the equivalent of four per cent on the fixed purchase price for the use thereof. The will, in the portion claimed to have been construed in 1939, may have in it words which under an extremely technical and over-drawn literal construction might be confused into a limitation upon the time within which the option was to be exercised. But the unconstrued portion of the will also contains words which clearly show that in addition to sustaining the relation of renters during the life of the mother, these sons also have the right to acquire the farms, although exercised after she dies. The testator says: "I also give them the privilege to exercise the purchase option at any time after my death, and should they decide to do so, the amount of the purchase price is to remain in each place during the life of my wife at the rate of four per cent per annum. Interest payable annually." It follows that thereafter the purchase price goes to the estate for distribution.

The testator owned other real estate. To be certain that it would be understood that he meant to set aside and place this property as described subject to the "option" rights given his two sons, he plainly excepted these farms from his other holdings by providing that upon the death of his wife "all other real estate I may own is to be sold to the highest bidder for cash, and the amount realized, together with all personal property I may own, and the amounts due from Henry and George are to be divided equally between my children or their heirs." The will further provides that "any indebtedness due me from any of my children is to be added to my estate and deducted from his or her share." He thus succeeded in establishing a basis of income for the widow and protecting the rights of the sons to acquire the farms he knew they were interested in and which he intended them to have, as well as in making provision for

the distribution of his holdings upon the death of his widow. If George and Henry, or either, had exercised the option to acquire title while the widow was alive, the arrangement for payment would not have been materially altered. From all the surrounding circumstances, now appearing in the judgment appealed from, there is every indication, when the unconstrued portion of the will as incorporated in the judgment is read carefully in the light of the apparent purpose sought to be accomplishd by the testator, that no construction destroying appellants' rights to acquire the farms was made prior to this judgment, and none can rightly be made and be consistent with the testator's plan to meet the convenience of those interested as well as the income emergency he was providing against. As suggested by the appellants, if the father, after making his will, had become incompetent before his death and his wife had died a few days thereafter, no reasonable purpose could be served by the lower court's interpretation of the clause under consideration. To rule that the sons could not benefit by the provisions made for them after the death of the mother would overcome the effort of the father to adjust his affairs in a way satisfactory to him and to serve the purpose intended. The respondents apparently attempt to answer this phase of the matter by urging that leaving the option to be exercised after the death of the widow could prolong indefinitely the final settlement of the estate. That contention has no foundation, because the law imposes upon the devisees in such circumstances the necessity of acting under the devise within a reasonable time. The doctrine recognized in *Estate of Bosse, supra,* governs here. As there ruled, the purpose of the will was to enable the devisees to purchase within a reasonable time after the probate proceedings were initiated. We find nothing on which to base the judgment appealed from warranting a conclusion that the right to exercise the option by the petitioners had in any way been impaired or destroyed because of the death of the widow. By imposing the payment of

the rent, as it was called, or the interest on the purchase price, as it was fixed by the testator, the two sons were at all times entitled to possession. Had they had sufficient funds on hand to purchase the farms while the widow still lived, they could not have been relieved of paying the rent or the interest on the value of the farms as fixed in the will. They were not required to exercise this privilege of purchase at any time prior to the time they made the effort to exercise it. We agree with the contention of the appellants "that this privilege to retain possession during the lifetime of the widow, was in addition to the privilege given to them to purchase after her death." There having been no judicial proceedings which prevent the appellants from pursuing their rights under the will as petitioned for, and the matter being properly before us, their petition should have been granted, and this portion of the will construed to permit the appellants to purchase the farms set apart for them in accordance with the terms fixed in the will.

Under the circumstances appearing in the record, the judgment ought to be reversed and the cause remanded with directions to enter judgment requiring the granting to the appellants the rights devised them. Otherwise we are affirming a judgment which holds that it is construing the will for the first time, and we are depriving the petitioners of the right to have us pass upon the construction of the will, because, as the majority say, it has already been construed.

I am authorized to state that Mr. Chief Justice FRITZ and Mr. Justice MARTIN join in this dissent.