Currie, J.
 

 The issue before us on this appeal is whether the three children, who were adopted in 1956 by Dr. Uihlein after the death in 1953 of the insured husband of the donor, are entitled to shares in the trust corpus.
 

 
 *225
 
 The general principles governing the interpretation of a trust instrument are the same whether created
 
 inter vivos
 
 or by will.
 
 Welch v. Welch
 
 (1940), 235 Wis. 282, 290 N. W. 758, 293 N. W. 150;
 
 Brock v. Hall
 
 (1949), 33 Cal. (2d) 885, 206 Pac. (2d) 360, 11 A. L. R. (2d) 672; and 2 Scott, Trusts (2d ed.), p. 1160, sec. 164.1. This being so, the general principles of construction applicable to all wills are pertinent because courts do not apply one set of rules of construction to wills having trust provisions and another to wills which do not.
 

 Whether adopted children of a particular individual take under a testamentary disposition the same as children of the blood is dependent upon the intention of the testator.
 
 Estate of Breese
 
 (1959), 7 Wis. (2d) 422, 426, 96 N. W. (2d) 712, and
 
 Lichter v. Thiers
 
 (1909), 139 Wis. 481, 488, 121 N. W. 153. Therefore, the problem before us here is to ascertain the intention of the donor.
 

 The guardian
 
 ad litem
 
 for the two minor natural children of Dr. Uihlein contends that we must first confine our quest to ascertain such intention of the donor to the provisions pf Article III (A) of the trust instrument in order to determine whether under the plain wording of such paragraph there is an ambiguity. We reject such approach.
 

 Whether an ambiguity exists must be determined from a consideration of the entire trust instrument and not from a single portion thereof.
 
 United States Trust Co. v. Jones
 
 (1953), 414 Ill. 265, 270, 111 N. E. (2d) 144, 147. This is because the intention of the creator of a trust is to be ascertained from the whole trust instrument, and not from the language of any particular provision or clause therein when taken by itself.
 
 In re Schwedler's Trust
 
 (1952), 113 N. Y. Supp. (2d) 306, 311, and
 
 Williams v. Morris
 
 (1933), 144 Or. 620, 625, 25 Pac. (2d) 135, 136.
 

 
 *226
 
 While the will before this court in
 
 Will of Stephens
 
 (1931), 206 Wis. 16, 238 N. W. 900, 80 A. L. R. 134, did not involve a testamentary trust, the court applied the principles of construction set forth in the foregoing paragraph. The will of the testator Stephens bequeathed certain money bequests to various nieces and nephews. Paragraph sixth of such will stated that he gave his niece Eloise Hall nothing (p. 17), “for the reason that I have heretofore given her a sum of money out of my estate equal in amount to her share as compared with her brothers and sisters
 
 and I zvill therefore give her no more.”
 
 (Emphasis supplied.) The nephews and nieces “aforesaid” were made beneficiaries under the residuary clause. The question was whether Eloise Hall took under the residuary clause. This court rejected the argument that paragraph sixth was unambiguous and clearly expressed an intent that she was not to share in any part of the estate. In its opinion the court stated (p. 19) :
 

 “The appellants, by their guardian
 
 ad
 
 litem, earnestly contend that paragraph sixth is unambiguous and clearly expresses an intent on the part of the testator wholly to exclude Eloise Hall as a beneficiary under his will.
 

 “Paragraph sixth, standing by itself, alone and apart from the other provisions of the will, is without doubt subject to such a construction. But we must look to the language of the whole will and read it in the light of the circumstances surrounding the testator, in order to discover what was apparently in his mind at the time he made it, and thus ascertain his intention.”
 

 When we consider the instant trust instrument as a whole we discover that there is an ambiguity present with respect to the issue of whether it was the intent of the donor that the three adopted children of Dr. Uihlein are entitled to share in the trust fund. The first “whereas” paragraph on page 2 states that such trust fund, “shall be for
 
 *227
 
 the benefit of the children and the issue of the children of Dr. Alfred Uihlein.” Then Article XVI states, that, “The words ‘child,’ ‘children,’ and ‘issue’ as used herein shall include the adopted children of any parent.” Construing these two clauses together, as we must, we have a clear and unequivocal declaration by the donor that the children of Dr. Uihlein for whose benefit she created the trust includes adopted children. However, when we turn to Article III (A) we find that the donor speaks of the “subsequent birth of a child or children of Dr. Alfred Uihlein.” If we ascribe to the word “birth” its literal meaning of being born from the body, then children adopted by Dr. Uihlein subsequent to the death of the insured husband of the donor are excluded and we have a conflict which results in an ambiguity.
 

 The guardian
 
 ad litem
 
 for the minor natural children of Dr. Uihlein contends that this court must construe the word “birth” as meaning born of the body and cites the cases of
 
 Wachovia Bank & Trust Co. v. Green
 
 (1954), 239 N. C. 612, 80 S. E. (2d) 771, and
 
 Third Nat. Bank & Trust Co. v. Davidson
 
 (1952), 157 Ohio St. 355, 105 N. E. (2d) 573. Both cases construed the word “born” with reference to children as excluding an adopted child. However, we do not consider that these two cases should control the result here. This is because there was no express clause included in the trust provisions there being interpreted which corresponded to the provision of Article XVI of the instant trust instrument expressing an intent that adopted children should take the same as natural children.
 

 In
 
 Dreyer v. Schrick
 
 (1919), 105 Kan. 495, 185 Pac. 30, the court there had before it for construction its pretermission statute, which provided that a child
 
 “bom’J
 
 after the execution of a will shall take the same share of the estate that it would be entitled to do if the testator had died intestate. The question before the court was whether a child
 
 *228
 
 adopted by the testatrix after she had made her will would share in the estate under such statute. However, the same argument was then advanced as here, viz., that the word
 
 “born”
 
 should be given its strict literal meaning. In commenting thereon the Kansas court stated (105 Kan. 497, 185 Pac. 31) :
 

 “This icily logical argument, based on the letter of the law, which killeth, is supported by judicial decisions from several states.”
 

 The Kansas court refused to follow such precedents and construed the statute as applicable to an adopted child. Our own court has construed Wisconsin’s pretermission statute, now sec. 238.10, as including adopted children in spite of the use of the words “when any child shall be born.”
 
 Sandon v. Sandon
 
 (1905), 123 Wis. 603, 101 N. W. 1089, and
 
 Glascott v. Bragg
 
 (1901), 111 Wis. 605, 87 N. W. 853.
 

 In
 
 Will of Ehlers
 
 (1913), 155 Wis. 46, 143 N. W. 1050, this court enunciated the principle of construction which we deem should govern the result here when it declared (p. 48) :
 

 “The court has very great power which may be exercised to prevent failure of a testator’s purpose, all in harmony with the rule that the legal intention of the testator is the one expressed by his language, though it may not be exactly the real intention he had in mind — that his purpose can be given vitality only so far as it can be read reasonably out of the will — but to the end that the testamentary idea may be so read the language should be examined in the light of the situation of the testator at the time he used it and all environing circumstances.
 
 If thereby the intention is plain, or the major probabilities are on the side of a particular intent, for the purpose of so reading the will as to express it, words may be given a very broad or very restrictive meaning, going to the very limit of the boundaries of reason, or may be transposed or rejected, or words not seen, may be read in place which are there by reasonable or necessary inference, or may
 
 
 *229
 

 be transposed or supplied, and thus the language be moulded to express, so jar as can reasonably be done, the testator’s intention.”
 
 (Emphasis supplied.)
 

 The decision of this court in
 
 Estate of Blackbourn
 
 (1951), 260 Wis. 25, 49 N. W. (2d) 755, exemplifies an application of the above-quoted principle of construction. There the testator provided (p. 26), “All of such nieces and nephews shall take
 
 per stirpes
 
 and
 
 not per capita
 
 as it is my desire that they shall
 
 share equally in my estate.”
 
 The provision that the nieces and nephews were to take
 
 “per stirpes”
 
 was in direct conflict with the expressed intent that they should share equally. We held that such expressed intent was controlling.
 

 Likewise in the instant case we deem the expressed intent of the donor, that the trust was created for the benefit of any adopted children of Dr. Uihlein, or his issue, as well as for his natural children, or their issue, controls here so that the word “birth” appearing in Article III (A), should not be interpreted as excluding children adopted by Dr. Uihlein after the death of the insured.
 

 In construing the trust instrument in order to arrive at the intent of the donor, it is appropriate that we consider the surrounding circumstances of the donor at the time she executed the instrument on November 1, 1948.
 
 Estate of Breese, supra,
 
 at page 426. Her son Dr. Alfred Uihlein then had no adopted children but her son Fred W. Uihlein had two. Her relationship to these two adopted children was a cordial one. It is a reasonable inference that this is the reason she caused to be inserted in the trust which she created for the benefit of the children of Dr. Uihlein, or their issue, the provision in favor of adopted children found in Article XVI. If Dr. Uihlein had adopted any children between November 1, 1948, and the death of the insured husband of the donor on July 28, 1953, there would be no
 
 *230
 
 question but what such adopted children would have shared in the trust fund. The donor would have been powerless to prevent it, even if she had desired to do so, because the trust is irrevocable. This being so, we can perceive of no valid reason why the donor should have intended that children adopted by Dr. Uihlein after the death of the insured should be excluded. The happenstance, that the insured died in 1953 instead of after the adoption proceedings had been consummated in 1956, would appear to be purely fortuitous and unrelated to any motive the donor might have to include, or exclude, adopted children as beneficiaries of the trust.
 

 Therefore, it is our considered judgment that the ambiguity must be resolved in favor of the three adopted children of Dr. Uihlein being entitled to share in the trust fund.
 

 The brief in behalf of the appellant guardian
 
 ad litem
 
 requests that the costs of all parties to this appeal be ordered paid out of the trust corpus inasmuch as the appeal was taken in good faith, and because the appeal has presented questions worthy of consideration by this court.
 

 In
 
 Davis v. Davis
 
 (1907), 132 Wis. 54, 111 N. W. 503, 111 N. W. 1129, which involved an appeal in an action for construction of a testamentary trust, this court directed that the costs of appeal be paid out of the estate inasmuch as the appeal was taken in good faith and the questions presented were worthy of presentation to this court. We deem that such case is sufficient precedent for us to direct that the costs of all parties to this appeal be paid out of the trust estate because there is no question but that all parties to this appeal acted in good faith and the question presented is worthy of our consideration. Such costs shall include reasonable attorney fees. We do not deem the fact that the two adversary parties here are two guardians
 
 ad litem
 
 precludes the payment of their costs of appeal from the entire trust estate instead of charging the same against the separate
 
 *231
 
 shares of the trust funds allocated, or to be allocated, to their respective wards. On this point, see
 
 Jones v. Roberts
 
 (1897), 96 Wis. 427, 434, 70 N. W. 685, 71 N. W. 883.
 

 By the Court.
 
 — Judgment reversed, and cause remanded with directions to enter a judgment consistent with this opinion, which judgmént is to provide that the costs of all parties to this appeal, including reasonable attorney fees, are to be paid out of the trust estate. No costs are to be taxed in this court.