ESTATE OF MacLEAN: MacLEAN and others, Appellants, v. FIRST NATIONAL BANK OF MADISON, Trustee, and others, Respondents.

*No. 218. Argued June 1, 1970.—Decided June 26, 1970.*
(Also reported in 177 N. W. 2d 874.)

---

For the appellants there was a brief by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Reuben W. Peterson, Jr.,* and *George N. Kotsonis* of counsel, all of Milwaukee, and oral argument by *Mr. Peterson.*

For the respondents there was a brief by *Willink & Thompson* of Madison, for the First National Bank of Madison; by *Blakely & Long* of Beloit, for the First Presbyterian Church of Beloit; and by *Stroud, Stroud, Stroud & Howard* of Madison, for Christ Presbyterian Church

of Madison; and oral argument by *Dale R. Thompson* and *Ronald W. Todd,* both of Madison.

HALLOWS, C. J. The will in its second paragraph gave to the testator's sister Mary M. MacLean the household furniture and personal property, a sum sufficient to retire any indebtedness on her home, and the sum of $5,000. The residue of the estate was given in trust to the First National Bank of Madison (First National) as trustee. From the income the trustee was to pay $250 a month to the sister as long as she lived and to take care of any special needs during her lifetime. Upon the sister's death and after the payment of her funeral expenses, the will directed that the corpus "be divided as follows:

"(1) Should such proceeds to be divided be Twenty Thousand ($20,000) Dollars or less, one-half thereof shall be divided in equal shares among those of the following who survive me, namely, my cousins, Alexander E. MacLean and Frank C. MacLean; my nephews, Kenneth F. MacLean and Harold E. MacLean; and my niece, Dorothy L. MacLean.

"(2) The remainder shall be held in trust by the First National Bank of Madison, Madison, Wisconsin and the income therefrom be paid at least annually, as follows:

"a. One-half thereof to the Christ Presbyterian Church of Madison, Wisconsin.

"b. One-half thereof to the First Presbyterian Church of Beloit, Wisconsin."

The will provided in the third paragraph that in the event the testator's sister should predecease him and "should such estate exceed Twenty Thousand ($20,000) Dollars, Ten Thousand ($10,000) Dollars thereof should be divided in equal shares among" the same persons designated in paragraph two. The remainder was likewise given to the trustee for the ultimate benefit of Christ Presbyterian Church of Madison and the First Presbyterian Church of Beloit. It is to be noted that the second

paragraph of the will in providing for the contingency of the sister surviving the testator does not expressly provide what should be done with the estate after her death if it then exceeds $20,000. Likewise, paragraph three, in considering the contingency of the sister predeceasing the testator, is silent on the disposition of the estate if it should be less than $20,000.

Since the sister survived the testator and the assets of the estate exceeded $20,000, the trustee had a problem in making a tax tender, the amount of which depended upon whether the second paragraph disposed of all the estate upon the death of the sister or resulted in an intestacy. The bank and its attorney construed the will to mean that if the balance of the estate after the death of the sister exceeded $20,000 the heirs should share $10,000 and the balance should be held in trust for the two churches. On this theory an inheritance-tax tender of $1,000 was made. The bank did not advise the appellants of this problem of construction or seek to have the court determine it under the procedure of sec. 310.11, Stats.,[1] prior to the hearing on its final account.

In January, 1964, the standard order and the notice for hearing on the final account and for the assignment of the residue of the estate was sent to the appellants. In the accompanying letter, it was stated: "I believe each of you has received a copy of Dr. MacLean's will and the estate will be distributed in accordance with the terms of that will." It also stated the notice "does not require your attendance at that hearing." The hearing was held on March 24, 1964. The petitioners did not appear. The hearing was held in the judge's chambers and no record of the proceeding was made. The final decree provided that upon the death of the sister Mary M. MacLean the

---

[1] "310.11 **Construction of will, notice.** The notice of hearing upon a petition for the construction of a will shall be given as provided in section 324.18."

trust would terminate, $10,000 of the corpus would be divided among the designated heirs of the testator and the remainder held in trust by the First National for the benefit of the two churches. A copy of this final decree was not sent to the appellants.

When a probate court enters a final decree which assigns property to a trustee of a testamentary trust without incorporating the terms of the trust therein by reference or without repeating verbatim the language of the will, such a construction of the will results which requires a petition and notice of the proposed construction. In the *Estate of Lyons* (1924), 183 Wis. 276, 197 N. W. 710, we held that sec. 3791a (now sec. 310.11), Stats., requiring notice for a construction of a will was not applicable to a hearing on a final account and for distribution of the assets of the estate on the theory "the court cannot assign the estate without construing the will." In *Will of Brandstedter* (1929), 198 Wis. 457, 224 N. W. 735, we stated at page 459 the probate court "had power to construe the will in the final judgment so far as it was necessary in order to assign the estate."

In the mine run of cases, especially those not involving a testamentary trust, the final decree construes the will only in the sense it follows the plain, unchallenged and explicit commands of the will. Most lawyers and lay persons do not consider this a construction but rather a compliance with the express directions of the will. When a will creates a trust, future events may create problems unappreciated at the time of the final decree and a construction of such problems ought not to be unknowingly solved or even knowingly determined without a hearing on the issue and upon a notice specially keyed to that purpose.

The doctrine of the *Lyons Case* that the final decree always construes a will whether the terms of the final decree vary from the will or incorporate the language of the will has had its difficulties. It was held that where

the final decree incorporates language of the will it did not construe the will and thus a construction of the will could be made later. *Will of Inbusch* (1927), 193 Wis. 10, 212 N. W. 634. In the dissenting opinion in *Estate of Fritsch* (1951), 259 Wis. 295, 304, 305, 48 N. W. 2d 606, it is said *Inbusch* incorporates but does not construe the will and nothing is res adjudicata and a bar to a future construction. But this theory did not square with the strict language of *Lyons* and in the *Estate of White* (1950), 256 Wis. 467, 41 N. W. 2d 776, it was said *Inbusch* construed the final judgment incorporating the will rather than the will. This devotion to semantics was somewhat strained in logic at least and made necessary the subsidiary doctrine that when the final decree incorporates the language of the will in reference to trusts or repeats verbatim the language of the will it is proper in construing the final decree to go back to the circumstances surrounding the execution of the will to aid in the construction of the decree. This was pointed out in *Will of Yates* (1951), 259 Wis. 263, 271, 48 N. W. 2d 601, and such other cases as *Estate of Horkan* (1956), 273 Wis. 442, 446, 78 N. W. 2d 767; *Will of Greiling* (1953), 264 Wis. 146, 149, 59 N. W. 2d 241; *Will of Dolph* (1951), 260 Wis. 291, 296, 50 N. W. 2d 448; and most recently repeated in *Will of Wehr* (1967), 36 Wis. 2d 154, 180, 152 N. W. 2d 868.

The instant case presents a serious defect in our probate practice and procedure whereby an important construction of a will can be made in a most informal and casual manner and without any real or adequate notice to the interested parties or a hearing in open court with a record made. The notice given in this case does not apprise a lay person that his rights under a testamentary trust are going to be adjudicated because of the transfer of the trust assets to the trustee. "For the assignment of the residue of the estate" hardly tells a problem exists of what beneficiaries of the trust are to receive the resi-

due and when. The final account is a separate matter from the distribution of assets. The letter to the appellants from the attorney for the executor is not a notice of a construction of a will and enclosed only the notice of hearing and the final account, but significantly did not include the proposed final decree.

The explanation in the letter of the notice that it set a time "to proceed to close the estate" and that "the estate will be distributed in accordance with the will" did not explain that the recipients' rights were directly involved. The notice did not tell the appellants of the tax problem and how the executor and its attorney had construed the will. True, the letter stated if the recipients had any questions they should ask the attorney or the executor, but this language to the effect that everything was routine would lull a reasonable man into security rather than place him on notice that his rights under the will were being scrutinized and determined.

The record is not clear why prior to the hearing the register in probate was told the final decree represented the executor's construction of the will. We are told the county judge was informed the final decree used language different from the will. But the hearing was not in open court and no record made or testimony taken. The hearing on final account should be in open court and when the proposed final decree uses language different than that appearing in the will or construes the will in the sense of ascertaining the meaning of the testator rather than following express, clear instructions, sec. 310.11, Stats., should be followed and a record of the reasons for the construction should be made and more importantly a special notice of the proposed construction of the will should be given to the parties interested and a copy of the petition for such construction accompany such notice. We think the present notice of final hearing was insufficient for this purpose and to this extent the *Estate*

*of Lyons, supra,* and the cases [2] resting thereon for the proposition that no special notice of such a construction of a will need be given are overruled.

We think this holding is required by procedural due process guaranteed by the constitution. *Lyons* was decided prior to *Mullane v. Central Hanover Trust Co.* (1950), 339 U. S. 306, 314, 70 Sup. Ct. 652, 94 L. Ed. 865, which held, "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. . . . The notice must be of such nature as reasonably to convey the required information." While this case dealt primarily with the manner of giving notice, the content of the notice, if it is to be a notice, is of equal importance and must meet due process.

Since the content of the notice in the case at bar was not "reasonably calculated" to inform the appellants that their rights were being directly affected at the hearing and they could appear and defend themselves, it is not necessary to consider the other ground for relief based on constructive fraud. We point out, however, an executor of an estate should not take sides and where there is a reasonable conflict of interest between beneficiaries, the executor should ask for instructions or for a construction of the will, if that is necessary, upon adequate and special notice to those beneficiaries affected. True, in this case the executor obtained a construction of the will and by a procedure which is claimed to be standard but which we now hold violates due process.

[2] Such as, for illustration: *Estate of Garbade* (1925), 187 Wis. 105, 108, 203 N. W. 748; *Will of Brandstedter, supra; Will of Yates, supra; Estate of Fritsch, supra.*

The fact that a probate proceeding is in rem does not lessen the requirement of a special notice for a special purpose. One interested in the probate of an estate should not be required to appear at every hearing in order to protect his rights to inherit. While it is sometimes said that in rem proceedings only require a notice essential to the acquisition of jurisdiction by the court, we think that when a matter in a probate proceeding directly determines the existence of a right of a beneficiary, a general notice of the closing of the estate is insufficient.

The appellants ask us to construe the will if we find they are entitled to a hearing. At the trial level they were given a hearing on construction and evidence of surrounding circumstances and testimony of conversations between the scrivener and the testator was admitted. Under these circumstances, but not establishing a precedent since the trial court did not reach the question of construction, we will construe the will to ascertain the intent of the testator. We may consider surrounding circumstances, but since there is no ambiguity in the will, we should not consider the testimony of the scrivener concerning his conversations with the testator. *Estate of Breese* (1959), 7 Wis. 2d 422, 96 N. W. 2d 712; *Estate of Landauer* (1952), 261 Wis. 314, 52 N. W. 2d 890.

We think that no intestacy resulted in the provisions of the will although the appellants claim there is an omission to cover the contingency which subsequently arose. We conclude that under the doctrine of a gift by implication it was the testator's intention that if his sister survived him and on her death the trust assets exceeded $20,000 that his five named relatives were to share equally the sum of $10,000 and the balance held in trust for the two churches.

The doctrine of a gift by implication does not result in a reformation of a will or correct an obvious mistake or an oversight by the draftsman. It is the ascertainment

of the intention of the testator from all the words used in the will in the light of surrounding circumstances to fill in a void or an omission in the expressed terms of the will. Unless the clue to the intention is imbedded in the words of the will, the court cannot imply the gift to fill the ellipsis. This doctrine is said to originate in *In re Donges's Estate* (1899), 103 Wis. 497, at 501, 79 N. W. 786, where it is expressed in the following words after stating the guidelines to ascertain the intention of the testator:

"Among these, two are relevant to the present consideration: first, that in case of doubt such construction will be adopted as to support and give effect to the will, rather than to defeat it; second, that a testator is presumed to have intended a complete distribution of his estate, and a construction tending to that end will be preferred to one which results in intestacy as to any part. *Mann v. Hyde*, 71 Mich. 278; *Given v. Hilton*, 95 U. S. 591, 594. In the carrying out of this latter rule courts often find themselves constrained to discover an intention to give, by the will, that which is not in fact given by express words, but which, it is clear from the other bequests and devises, it was the intention of the testator to give, as being so clearly implied from the gifts in fact made and the purpose of the will that silence can signify only an omission to state that which was in the testator's mind and intended. These are called devises or bequests by implication. Mr. Schouler (Wills, sec. 561) states the general rule: 'A devise will be raised by implication under a will where the context requires it, and the devise is not in express terms;' and, after a few illustrations, sums up the subject as follows: 'In short, a gift by implication may be presumed wherever the conclusion is irresistible that the testator so intended it.' "

The appellants argue we should disregard paragraph three of the will since it is inoperative and restrict our consideration to paragraph two. This under the standards of construction we cannot do even though that paragraph of the will is inoperative because it sheds light on

the intention of the testator. The paragraph shows an intention of the testator to make a gift to the two churches in the event his sister predeceased him and the trust assets exceeded $20,000. The testator's first concern was for his sister. He made gifts only after she was taken care of for life. The provisions for the relatives did not exceed $10,000 under any express contingency, and an estate up to $20,000 was shared equally by the relatives and the churches. Consequently, in the general plan, the churches had a preferred position in the intention of the testator. He did not intend an intestacy as he attempted to give all his estate in trust; the omission occurs only in the distribution of trust assets. There is no reason not to give to the churches if the estate exceeded $20,000 and his sister was taken care of for life and every reason why he should do so.

In *Donges,* where a gift by implication was found, the will provided for a gift to the wife of the residue until the youngest child was twenty-one and if no child survived to the wife unless she remarried. Two children were born after the will was executed. The wife elected not to take under the will. The court held the testator intended to give the remainder to the children when the youngest reached twenty-one and the failure to do so was an omission. In the *Will of Schneider* (1955), 268 Wis. 610, 68 N. W. 2d 576, the will gave a remainder in trust for the daughter; she to receive the income for five years, but if she failed to survive the five years, the trust was to continue until the youngest child of the daughter attained twenty-one and then the assets were to be shared by the husband and the children. The will omitted to state who should receive the trust assets if the daughter survived the five years. It was argued an intestacy resulted but the court from the terms of the will found "an omission to state that which was in the testator's mind and intended," namely, to give the trust assets to the daughter if she survived the five years.

The appellants rely upon *Will of McDowell* (1966), 31 Wis. 2d 519, 143 N. W. 2d 506, and *Will of Wehr, supra,* claiming the will leaves an intestacy. The reliance on these cases is misplaced. In those cases the court did not reject the doctrine of a gift by implication but could not find in the will an intention of the testator to make a gift under the circumstances which developed and thus an intestacy resulted. In the case at bar we think the conclusion is irresistible that the testator did intend the churches to be the beneficiaries of the trust if the estate exceeded $20,000 after his sister's death, both when she predeceased him and when she survived him, and no intestacy resulted from the omission to state the latter expressly in paragraph two of the will.

In view of this disposition it is unnecessary to consider the objections to the order allowing attorney's fees.

In the event of affirmance, the appellants asked that their attorney's fees and disbursements be paid out of the corpus of the trust as the attorneys for the executor and the two churches were. We agree. The costs and reasonable attorney's fees of all parties to this appeal at the trial level and on appeal should be paid out of the estate. The appellants raised and were successful on an important question worthy of our consideration and a construction of the will was made by this court. *See Uihlein v. Uihlein* (1960), 11 Wis. 2d 219, 105 N. W. 2d 351, and *Davis v. Davis* (1907), 132 Wis. 54, 111 N. W. 503, 111 N. W. 1129.

*By the Court.*—Judgment and order affirmed and the cause remanded for the purpose of allowing reasonable attorney's fees and costs of all parties to this appeal. No costs are to be taxed in this court.