IN RE TRUST CREATED UNDER THE LAST WILL AND TESTAMENT OF PAULY: WILSON, Appellant, v. FIRST WISCONSIN TRUST COMPANY, Trustee and another, Respondents.

*No. 551 (1974). Argued November 25, 1975.—*
*Decided February 3, 1976.*
(Also reported in 237 N. W. 2d 719.)

For the appellant there were briefs by *John W. Emmerling* and *Edward D. Styles* of Milwaukee, and oral argument by *John W. Emmerling*.

For the respondent Richard H. Eggleston, there was a brief by *Russell M. Ware* and *Kasdorf, Dall, Lewis & Swietlik,* all of Milwaukee, and oral argument by *Russel M. Ware.*

HANLEY, J. The sole issue, which is dispositive of this appeal, is whether the doctrine of gift by implication is appropriate to the trust provision of a will that is silent as to the disposition of the trust under the circumstances that have occurred.

As not infrequently occurs, the decedent has provided relatively clear instructions for the disposition of property under certain circumstances which unfortunately have not taken place. In the silence of the testatrix, one of her grandchildren urges intestacy while the heir of another proposes a "gift by implication." The trial court accepted the latter proposition.

Gifts by implication were reviewed in the recent case of *Estate of Connolly* (1974), 65 Wis. 2d 440, 459, 222 N. W. 2d 885. From the *Estate of MacLean* (1970), 47 Wis. 2d 396, 177 N. W. 2d 874, three requirements were noted as necessary for the application of a gift by implication.

". . . (a) ' '. . . an omission to cover the contingency which subsequently arose, . . .' (b) '. . . the ascertainment of the intention of the testator from all the words used in the will in light of surrounding circumstances to fill in a void or an omission in the expressed terms of the

will. . . .' (c) that the '. . . clue to the intention is imbedded in the words of the will. . . .' " *Connolly, supra,* at pages 461, 462.

Most importantly, *MacLean* noted that the doctrine is not to be used to reform a will "or correct an obvious mistake or an oversight by the draftsman." *Id.* at page 405. Certainly ambiguities in a testamentary disposition may receive construction, and courts may correct mistakes in light of the decedent's intent; for an omission, however, the only recourse is the possibility of a gift by implication.

In analysis of the trust provision, the trial court first took notice that the final judgment in probate of the will entered on January 27, 1938 contained an apparent construction of the trust language. Instructions were given to the trustee to distribute the trust property in equal shares to Francis and Annette upon Francis' having reached age thirty and upon both Francis Huebschmann and Elsa Pauly Wilson being dead. The trial court rejected the conclusiveness of this interpretation on the basis of sec. 310.11, Stats. 1969 (now sec. 836.21) and *Estate of MacLean, supra,* because the parties in interest at that time had not been notified that construction of this provision was being undertaken. In addition, no record of the reasons for the interpretation was preserved.

The trial court was in error to state that the trust provision required construction, a construction that would alleviate the presumption of intestacy that was violated by the omission. The general rule is that construction arises only if language is ambiguous. *Will of Wehr* (1967), 36 Wis. 2d 154, 179, 152 N. W. 2d 868. Omission of a circumstance here is not ambiguity of language and is not that uncertainty of meaning, *Will of Boeck* (1915), 160 Wis. 577, 580, 152 N. W. 2d 155, that justifies judicial construction.

The case law cited by appellant does not, as is contended on the other hand, stand for the proposition that judicial

scrutiny of the provision is inappropriate. Certain cited decisions that repudiate the presumption against intestacy as a basis for construction are cases where the intestacy is clearly sought or where a gift by implication is not probable. *Colonial Bank & Trust Co. v. Stevens* (1972), 163 Conn. 612, 316 A. 2d 768; *In re Beldon* (1938), 11 Cal. 2d 108, 77 P. 2d 1052; *In re Butler's Will* (1957), 9 Misc. 2d 892, 170 N. Y. S. 2d 767; *In re Dobrovolny's Estate* (1958), 182 Kan. 138, 318 P. 2d 1053. It was error to say that the presumption against intestacy, however, created an uncertainty in the trust provision. The proper course is to note that the provision is silent under the circumstances, and that the court may review the will to see if the gap is filled by implication. Such scrutiny is not "construction." Guides to the testatrix' intent, such as the presumption against intestacy, may be considered within this analysis. Simes and Smith, *Law of Future Interests* (1956), pp. 327, 328, secs. 842, 844.

The trust provision in the Pauly will was a residuary disposition of all of the testatrix' estate. Income for life was provided for her brother and daughter. If her daughter, Elsa Pauly Wilson, died before her grandson reached age thirty, the testatrix provided that both of her grandchildren would receive this income and eventually take the corpus when the grandson attained that age. No explicit mention of a disposition was made if Elsa was still living when her son became thirty and the conditional disposition failed.

Appellant argues that this absence demonstrates a reversionary interest (a "possibility of reverter upon the simultaneous creation of a fee simple determinable," sec. 700.04 (1), Stats., the latter being a defeasible fee simple "automatically expiring upon the occurrence of a stated event . . ." which "can be either the happening, or the nonhappening, of a specified occurrence, and can be either certain or not certain to happen;" sec. 700.02 (2)) that passed by intestacy to Elsa Pauly Wilson when ap-

pellant reached age thirty in 1945. Since the life estate and fee then merged, the trust should have ceased and distributed to Elsa or her assigns; in this case, as the sole assignee upon her renunciation, Francis would take the entire proceeds.

In his contention, the appellant does not go so far as to urge that this situation was intended by the testatrix. It is claimed only as a highly probable result, among others, that can be presumed within the testatrix' contemplation. We do not agree with the above contention. A review of the will language leads irresistably to the conclusion that the testatrix had in mind the intention that upon the termination of the life estate of Elsa Pauly Wilson, the trust should be terminated and the corpus should be distributed to the grandchildren.

In the case of *In re Donges's Estate* (1899), 103 Wis. 497, 500, 501, 79 N. W. 786, the testator had provided that if none of his children lived at the time of his death, then his wife was to be sole owner of his real estate. He first provided that she take this estate and its income until the youngest of the children attain the age of twenty-one years. Since he died in fact with spouse and children surviving, the court held:

"A careful reading of the whole will leads us irresistibly to the conclusion that the testator had in mind the intention that upon the majority of the youngest of his after-born children the real estate, which meanwhile was devised to his widow, should pass to them . . ." *Id.* at pages 503, 504.

*Will of Schneider* (1955), 268 Wis. 610, 68 N. W. 2d 576 contained a provision somewhat similar to the one in question here. The testator created a trust allowing his daughter income for five years. He further provided that if she should die before such time allotment, then the trust was to continue until her youngest child reached its majority. At that time the corpus was to be divided and

distributed to the children and her husband. No provision was made for the actual occurrence of her survival past the five-year period. Rejecting arguments as to the demonstrated intention of intestacy by the testator's son, this court noted substantial grants in his favor and the clear implication that the trust was to cease in the daughter's favor. The provisions for distribution otherwise were viewed as precautions for her early demise.

The rationale employed by these cases are consistent with the nature of the phrase "by implication." When an omission is discerned, the doctrine is applied to correct the gap that occurred perhaps by faulty craftsmanship, but which is clearly covered by the scheme inherent in the document. It is not meant to correct an oversight of possible future events or to supply an alternate disposition for the sole, specific plan that has failed.

The further rationale of these cases is that the intention of the testator must be derived from the will itself. *Estate of Connolly, supra,* at 461; *MacLean, supra,* at 405, 406. This has been restated as:

"If, however, the property or estate claimed to be bequeathed or devised by implication, in a contingency which has occurred, has been made the subject of an express bequest or devise in another contingency, which did not occur, then effect may be given to such bequest or devise by implication, in the contingency which did occur, if a reading of the entire will makes manifest that such was the intention of the testator." *Spathariotis v. Spathas' Estate* (1965), 156 Colo. 131, 398 Pac. 2d 39, 44.

The wording of the document thus provides the scheme that is implied in the unexpressed circumstance.

In the case at bar, the testatrix provided a means of ultimate disposition of the trust if her daughter died while her issue were still young. Income payments, as had been given to the daughter, would be continued until the children ended early adulthood, when the trust would distribute. This scheme of providing initially for her child

and then for her grandchildren impliedly is the same order of distribution to be followed upon the child's death after her children have completed early adulthood.

The appellant would contest this implication in that the trial court did not find and there was no basis for the finding that this remainder by implication was "irresistible." This standard is taken from *In re Donges's Estate, supra,* where it is stated that

". . . a gift by implication may be presumed wherever the conclusion is irresistible that the testator so intended it." *Id.* at page 501, quoting Schouler on *Wills,* sec. 561.

The trial court acknowledged this language in the written decision accompanying its order. Although that writing concluded that it "would appear" that the testator's intent was for the implied gift, no implication need arise that an erroneous standard was applied. Besides the inconclusive nature of "irresistible" as a legal standard, it is a pointless exercise of form over substance to require use of that phrase. Its significance lies in the fact that implied gifts are not routinely found.

Appellant also relies on the *Schneider* case to demonstrate that a different result from approximately the same will language effectively shows that no conclusion therefrom is "irresistible." A significant difference between the provisions under scrutiny is this trust's specific determination that the first beneficiary have a life interest. It is proper to note that "a litigated will has no twin." *Spathariotis, supra,* 398 P. 2d at 44.

Likewise, the appellant urges a standard from the language in *O'Hearn v. O'Hearn* (1902), 114 Wis. 428, 90 N. W. 450 that:

"The probability of an intention to make the gift implied must appear to be so strong that an intention contrary to that which is imputed to the testator cannot be supposed to have existed in his mind." *Id.* at page 432.

Again, this language implies the strictness with which the doctrine should be applied, rather than comprising

an absolute test. The omission which the implication fills may be filled by other dispositions which could comprise some conceivable aim of the decedent, yet the clear implication need not be thereby ignored. Appellant has proposed thirty possible occurrences that could have taken place upon the testatrix' death, only one of which is precisely covered by the trust wording. These contingencies fall into the two classes of Elsa's death before and after Francis' age thirty, with the same variations in each class due to the grandchildren's death with or without spouse and issue prior to Elsa's demise. The fact that an equal number of uncertainties occur in both the specified and implied circumstance in itself bolsters the conclusion that these possible problems, mainly of remainders upon survivorship failures, were not of such a nature that indicates a possible intent contrary to the implication.

Appellant contends that the trial court should be reversed because under the facts as they exist today one-half of the trust corpus will go to the estate of Annette Eggleston and presumably go to the only beneficiary under her will, her husband. It is argued by appellant that this is not what the testator "would have intended." It is asserted that the testatrix could have preferred distribution to appellant and his heirs rather than to Annette's spouse, a "stranger" to the blood line. Since the testatrix, as aware of her granddaughter's condition, did not reflect a concern for it in the specific distribution listed, it is speculative to call this such a contrary intent that bars the intent implied in the trust provision. The rule that bars extrinsic evidence in determining a gift by implication might well apply also to attempts to upset the gift. In searching for the intent of the testator, we must limit our inquiry to the facts and situations as they existed at the time the document was made, and not at the time of court proceedings. 99 C. J. S., *Wills*, p. 911, sec. 635.

Finally, the appellant takes issue with the trial court's finding that the remainder here was absolutely rather than defeasibly vested. If the corpus was defeasible by

death, the portion allocated to Annette would ultimately devolve to Francis. *See: Will of Fitton* (1935), 218 Wis. 63, 259 N. W. 718.

In *Will of Walker* (1962), 17 Wis. 2d 181, 190, 116 N. W. 2d 106, this court questioned the presumption that vested remainders be absolute rather than defeasible. Subsequently, in *Will of McDowell* (1966), 31 Wis. 2d 519, 528, 143 N. W. 2d 506, it was noted that *Walker* meant that both forms be "available for consideration."

The intent of the testatrix may be gathered from the language employed in the will, *Will of Emmerick* (1954), 268 Wis. 186, 189, 67 N. W. 2d 374, considered in the light of the surrounding circumstances.

We agree with the trial court's finding that there is no language in the will which would indicate an intent on the part of the testatrix for Annette to have anything but an absolute vested interest. This interest vested at the time of the testatrix' death. We think it is clearly implied that the testatrix intended that result. The failure of the will to expressly so state indicates only an omission of language. The intention which the trial court properly discerned was for the interest to absolutely vest.

*By the Court.*—Order affirmed.