WILL OF NIELSEN : NIELSEN, Appellant, vs. NIELSEN, Executor, Respondent.

*February 9—March 7, 1950.*

For the appellant there was a brief by *Thompson, Monk & Thompson* of Racine, and oral argument by *John F. Thompson*.

For the respondent there was a brief by *Harvey, Lawton & Harvey* of Racine, and oral argument by *Richard G. Harvey*.

Fritz, C. J. On the first hearing pursuant to Henry Nielsen's petition for the construction of the residuary clause in the will of Cristen Nielsen, no one appeared to oppose Henry Nielsen's and his son Vernon's position that, under the provisions in that clause, the residuary estate should be divided between them; and relying on the fact that no one appeared for that purpose, Henry and Vernon Nielsen failed to introduce any evidence as to material surrounding facts and extrinsic circumstances which existed at the time of the execution of the will, and were pertinent in the construction thereof. In the absence of such evidence, the court rendered a decision contrary to the position of Henry Nielsen and his son Vernon; and upon the latter's petition, the court granted a rehearing for the construction of the residuary clause. Again no one appeared in opposition to the position of Henry and Vernon Nielsen, but they introduced evidence to establish facts upon which they based their position and contentions.

The will was executed on February 14, 1935. In the second paragraph Cristen Nielsen bequeathed $1,000 to his brother Claus Nielsen; and the third paragraph provided:

. "The rest, residue, and remainder of my estate, whether real or personal and wheresoever situate, I give, bequeath, and devise to my brother Henry Nielsen, Helga Nielsen, his wife, and Vernon Nielsen, their son, in equal parts, being a one-third part thereof to each."

There are no other beneficiaries named in the will. Henry Nielsen's wife, Helga, died on April 21, 1940. On April 9, 1947, the testator died. He was survived by his ten sisters and brothers, including Henry; but none of them excepting Henry appeared in the probate proceedings.

On the evidence introduced on the rehearing by Henry and Vernon Nielsen as to the surrounding facts and extrinsic circumstances in relation to the execution of the will, and

particularly the provisions in the residuary clause, the court found:

"Second: That Helga Nielsen, sister-in-law of the testator died in the year 1940. . . .

"Fourth: That the testator intended to prefer his brother Henry, his nephew Vernon, and his sister-in-law Helga, in regard to the distribution of his property, over all of his brothers and sisters, with the exception of his brother Claus, who was given a specific bequest of one thousand dollars ($1,000).

"Fifth: That the testator intended to exclude from his estate all brothers and sisters not mentioned in his will."

Those findings were fully warranted by evidence to the following effect:

When Cristen Nielsen executed the will, and when he died, he had four sisters and six brothers; five of them lived in Europe. Three of the brothers and a sister lived in Wisconsin, but except for his brothers Claus and Henry, the testator had little regard for his other brothers and sisters, and in fact had a distinct dislike for several of them.

A neighbor, Mrs. Peterson, testified:

When the testator lived alone, his sister-in-law Helga went up and helped him with his housework sometimes; she washed and cooked things for him, mended his clothes, and baked, and helped him whenever he needed help, and he thought a great deal of her. Henry and Cristen were real brothers, and he thought as much of Vernon as if he had been his own boy. The testator and Henry Nielsen and his family were living as one family for many years, first on the Tucker farm, and then about eight years on the Rowland Lee farm, and Vernon Nielsen visited his uncle quite often. The testator said that his other brothers and sisters never did anything for him so he did not care to have much to do with them.

Mrs. Peterson's husband testified:

He knew the testator for thirty years. When testator lived alone he did his own housework except when he had to have a good cleanup. Helga would come over there and clean him

up once a week. She washed for him, canned for him, and everything just like a wife. He thought a great deal of what she did for him. Henry and the testator were very close and this feeling lasted throughout the time we knew them. I never saw two brothers closer than Henry and Cristen. The feeling existed both while they farmed together and after they separated their farms. Testator did not have a car and so Henry would come over and pick him up. He did not like Paul; I heard him say that Paul skinned him. They did not seem to hitch at all. He had no good feelings toward his other brothers and sisters. Testator would come over and talk about the disposition of his property on his death. If there would be anything left, Henry and his wife and the boy should have it. Testator felt as though Vernon were his own, and he felt the same toward Helga. He liked his brother Claus, but the rest they were blank. We visited back and forth frequently and I never heard him say anything harsh about the Henry Nielsen family.

Leo Dam testified:

He was asked by Cristen Nielsen to drive him to Union Grove and he took him to attorney O. R. Moyle and was present while the testator told Moyle what to put in the will.

Attorney Olin R. Moyle testified:

He drew the will and kept notes in his own handwriting with reference to the will. Testator stated he wanted one brother, Claus Nielsen, to receive $1,000; that he wanted the farm and all the rest of his property to go to his brother, Henry Nielsen, and Helga Nielsen, his wife, and Vernon Nielsen, the son; all of it to go to them, one third. In response to Moyle's questions testator stated that he had other brothers and sisters; and gave their names, Paul Nielsen, Ted Nielsen, Christina Schroeder, living in this country; and then stated the other brothers and sisters in the old country, as he called them, Christ Nielsen and Nels Christen Nielsen and Marie Larsen, Claudina Miller, and Elizabeth Nielsen, were all in the old country; that he wanted his property to go to those named in the will, that is Claus, Henry, Helga, his wife, and Vernon, their son. He named all of his brothers and sisters in response to Moyle's questions, and stated to

him that he wanted his property to go to the ones named in his will.

Moyle's notes read:

"Christian [Cristen] Nielsen—town Mt. Pleasant

1st Pay all debts
2d Give one bro. $1,000    Nielsen has farm
      Claus Nielsen—Racine    Wants to give to bro.
3d Henry Nielsen—town Raymond
      Helga Nielsen—wife      Other brothers & sisters
      Vernon Nielsen—son     1 Paul Nielsen
      all the balance        2 Ted Nielsen
      1/3 each              3 Christine Mrs. Schroeder

                          In old country
                          4 Christ Nielsen
                          5 Nils Christian Nielsen
                          6 Mrs. Marie Larsen
                          7 Claudina Miller
                          8 Elizabeth Nielsen

           Executor—Henry Nielsen"

Notwithstanding that uncontradicted and undisputed evidence and the above-stated findings based thereon, the court concluded:

"That the residuary bequest to Helga Nielsen lapsed by reason of her death prior to that of the testator, and that her share of the residue should descend as intestate property to the heirs of the testator."

And the court adjudged:

"That the bequest of a one-third share of the residue of the estate of the testator given to Helga Nielsen by the third paragraph of testator's will, has lapsed by reason of her death prior to the time the testator died, and that her one-

third share of the residue shall descend as intestate property to the heirs of the deceased."

That adjudication cannot be sustained. The evidence introduced on the rehearing as to the surrounding facts and extrinsic circumstances in respect to the execution of the will, and particularly the commendable brotherly and mutually fond and helpful family relationship, which existed and lasted for over a quarter of a century between the testator and his brother Henry and his wife Helga, and their son Vernon, until the testator's death, as compared to the indifferent attitude toward the testator of the sisters and other brothers, and his relations with them, which were anything but cordial, with the exception of his brother Claus, fully warranted the court's "fourth" and "fifth" findings. In view of those findings, and the undisputed evidence as to the facts and circumstances upon which they are based, the court erred in concluding that by reason of Helga Nielsen's death her one-third share of said residue of the testator's property should descend as intestate property to the testator's other heirs, all of whom the court found the testator intended to exclude from his estate, and did not mention in his will. Consequently, the court's conclusion that all of them are nevertheless entitled to share in Helga's one-third share of said residue of his estate as *intestate* property is in disregard of the rules that,—

". . . a testator is presumed to have intended a complete distribution of his estate, and a construction tending to that end will be preferred to one which results in intestacy as to any part." (*In re Donges' Estate,* 103 Wis. 497, 501, 79 N. W. 786; *Estate of Radcliffe,* 194 Wis. 330, 331, 332, 216 N. W. 501) ; and that "there is a very strong presumption against an intended intestacy—a presumption which becomes especially significant where the residuary clause is under construction." (*Estate of Hoermann,* 234 Wis. 130, 135, 290 N. W. 608.)

Even though the death of Helga Nielsen prior to the death of the testator might be deemed to give rise to an ambiguity

which required a construction of the will, as the trial court found, its finding that the testator intended to exclude from his estate all brothers and sisters not mentioned in his will, and the presumption against an intended intestacy, clearly warrant the conclusion that the entire residue is to go to Henry and Vernon Nielsen as the surviving residuary legatees. In solving the problem, the extrinsic facts and circumstances surrounding the testator at the time of drafting his will must be considered in determining his intention. In view of those facts and circumstances, it is obvious that he intended that Claus should receive only $1,000; that all of the rest of testator's property should pass to those named in the residuary clause; and that no part of his estate should go to the testator's other brothers and sisters. In this case, as under somewhat analogous provisions and surrounding extrinsic facts and circumstances in *Will of Waterbury*, 163 Wis. 510, 158 N. W. 340, it was evidently the testator's intention that Claus Nielsen was to be paid a legacy of $1,000 and this amount was not to be augmented; that he bequeathed and devised all the rest, residue, and remainder of his estate to his brother Henry, his wife and their son; and that,—as the court found,—the testator intended to exclude from his estate all brothers and sisters not mentioned in his will. Likewise there is applicable the conclusion in *Will of Waterbury, supra,* that the fact that by the residuary clause in Nielsen's will, the residuary estate is divided into three equal parts, one of which is assigned to each of the legatees therein named, is not inconsistent with the intention of the testator to confine the distribution of the residue of his estate to solely persons named in such residuary clause; and that is true irrespective of whether or not they constitute a class.

*By the Court.*—Judgment reversed and cause remanded with directions to enter judgment in accordance with the opinion.