WILL OF MCDOWELL: MALCOLM, Appellant, v. FIRST NATIONAL BANK & TRUST COMPANY OF RACINE, Executor, Defendant: BUSH and others, Respondents.

*June 7—July 1, 1966.*

522

For the appellant there was a brief by *Charne & Tehan,* and oral argument by *William E. McCarty,* all of Milwaukee.

For the respondents Mrs. Charles Bush, Mrs. Floyd Brown, Samuel C., Raymond, Phillip, Willington, and Oakley Hopkins, Mrs. Lawrence Sutton, and Harold A. Konnak, guardian *ad litem* for unknown heirs of L. A. McDowell, there was a brief by *Konnak & Constantine* of Racine, and oral argument by *Charles M. Constantine.*

For the respondents Daniel, Deborah, David, and Dawn Eppers and Randal P. Miller there was a brief by *John W. Foley* and *Foley, Capwell, Foley & Kolbe* of Racine, and oral argument by *John W. Foley,* guardian *ad litem.*

FAIRCHILD, J. 1. *Robert Malcolm's claim.* Paragraph Fifth, on its face, provides for a gift to Malcolm only upon the contingency that neither Mrs. McDowell nor Jerome survive the testator, and Jerome die without issue. Since both did survive, the contingency did not occur, and paragraph Fifth, according to its terms, never became operative.

Malcolm, however, argues that the intention of Mr. McDowell to benefit Malcolm in preference to all others except Mrs. McDowell, during her life, Jerome, and Jerome's issue, is so clear that paragraph Fifth implies a gift to Malcolm on the contingency which did occur, namely that Jerome died without issue before Mrs. McDowell. Malcolm has produced evidence tending to show a friendly and fairly close relationship between him and the McDowells of long duration. He also suggests that since he was approximately the same age as Jerome, spent some time with Jerome, and because Jerome had a serious personal problem by reason of addiction to narcotics, Mr. McDowell thought of Malcolm as virtually a second son.

It must be noted, however, that although the will provided for several contingencies as to persons surviving

Mr. McDowell, there are several possibilities for which he did not provide, and the contingencies for which he did provide (failure of Mrs. McDowell to survive Mr. McDowell, and failure of both Mrs. McDowell and Jerome to survive, Jerome dying without issue) would be determined at the time of his death. Jerome might have died before testator, while Mrs. McDowell survived testator; Jerome might, and did, die after testator, but before Mrs. McDowell; Mrs. McDowell might have died, and then Jerome, before Jerome reached forty. Testator made no express provision for any of these contingencies. In no instance did he provide an alternative disposition to go into effect on the happening of some contingency after his death.

What makes Malcolm's position appealing under present circumstances is that if he does not take, the property will apparently pass to legatees of Mrs. McDowell, or perhaps to nieces and nephews of Mr. McDowell, and it seems that Mr. McDowell would have preferred to benefit Malcolm had he visualized the present situation. Suppose, however, that Jerome had remarried and left a wife, or had left a will, or had assigned his interest in order to provide for himself. Is it so clear that Mr. McDowell would have preferred Malcolm over his son's widow, legatees, assignees, or creditors? Of course if Mrs. McDowell had not survived, and Jerome had married and died before his father, and his father had left his will unchanged, Malcolm would have been preferred over Jerome's widow, but does it follow that the testator must have intended the same order of preference if the events occurred after his death, when he could no longer change his will?

Appellant Malcolm relies upon a doctrine of gift by implication, which has been described as follows:

"Since the courts endeavor to ascertain the intention of testator from his whole will rather than disjointed parts thereof and to enforce this intention if lawful when thus ascertained, it follows that it is possible for testator

to dispose of property, not by any formal disposition in his will, but by necessary implication from his will taken as a whole. The presumption is very strong, however, against his having intended any devise or bequest which he has not set forth in his will. There must be a probability arising from the whole will that testator intended to make the bequest or devise, which he has not set forth expressly, so strong that it cannot be supposed that any other intention existed in the mind of testator." [1]

The court applied the doctrine in *Estate of Donges*.[2] There the will devised real estate to testator's wife " 'to have and to hold the same until the youngest of my children, if any be born to me, shall attain the age of twenty-one years. In case there are no children living at the time of my decease, my said wife shall be the sole owner of my real estate.' " [3]

The court said:

"A careful reading of the whole will leads us irresistibly to the conclusion that the testator had in mind the intention that upon the majority of the youngest of his after-born children the real estate, which meanwhile was devised to his widow, should pass to them, and that the failure to so declare was, as in the many cases above referred to, merely an omission to express an intention fully present in the mind of the testator." [4]

We also applied the doctrine in *Will of Schneider*.[5] There the will bequeathed the residue in trust "for the benefit of my daughter Janet Welch for a period of five years after my death, she to be entitled to receive the income thereof during said period." The will did not expressly dispose of the trust fund after the five-year period, but went on to provide that if Janet died during

[1] 4 Page, Wills (Bowe-Parker, rev. 1961), p. 119, sec. 30.18. See also 57 Am. Jur., Wills, p. 782, sec. 1192; and 95 C. J. S., Wills, p. 783, sec. 595.

[2] (1899), 103 Wis. 497, 79 N. W. 786.

[3] Id. at page 501.

[4] Id. at pages 503, 504.

[5] (1955), 268 Wis. 610, 611, 68 N. W. (2d) 576.

the five years, the trust should continue until her youngest child reached twenty-one, when the corpus would be divided between her husband and her surviving children. This court said:

"We think it is clearly implied that the testator intended Janet, also, to take the residue free from trust restrictions when the term of *her* trust,—five years following his death,—was completed. The failure of the will to say this directly can signify only an omission to state that which was in the testator's mind and intended and, as in the *Donges Case*, . . . . it is the court's duty 'to supply the ellipsis or omission of the testator.' " [6]

In other cases, this court has held that a gift may be implied only where the intent is perfectly clear, though not really expressed. In *O'Hearn v. O'Hearn* [7] the will left property to testator's wife during her life, and at her death one half to her son. The trial court held that there was a gift by implication of the other one half to testator's other children after the widow's death.

This court reversed, saying:

"The rule upon which a devise by implication is based is that it is raised only under a will where the context requires it and the devise is not in express terms. It is only admitted as a means of carrying out what the testator appears on the whole to have really meant, but failed somehow to express as distinctly as he should have done. . . . The probability of an intention to make the gift implied must appear to be so strong that an intention contrary to that which is imputed to the testator cannot be supposed to have existed in his mind." [8]

The *Donges* and *Schneider* wills far more compellingly implied a gift than does the McDowell will. We conclude that the McDowell will does not clearly demonstrate an

---

[6] Id. at page 614. See also *Estate of Cordes* (1957), 1 Wis. (2d) 1, 82 N. W. (2d) 920.

[7] (1902), 114 Wis. 428, 90 N. W. 450.

[8] Id. at pages 431, 432. See also *Lawrence v. Barber* (1903), 116 Wis. 294, 306, 93 N. W. 30.

intention that Robert Malcolm should take if Jerome survived his father, but died without issue before his mother.

2. *The claim of the present McDowell heirs.* Respondents Bush *et al.*, are the children of a deceased sister of Mr. McDowell. As of the date of death of Mrs. (McDowell) Harrison, testator's widow, they were testator's next of kin.

The trial court considered that the remainder interest was vested in Jerome, absolutely and not defeasibly, at the death of testator.

Respondents Bush *et al.*, contend that a rule favoring defeasible vesting of remainder interests in property left in trust should be preferred to a rule in favor of early and absolute vesting. They point out that in a situation like the present one where the remainderman does not live to possess and enjoy the gift, treatment of his interest as absolutely vested results in additional probate proceedings and tax burdens because the remainder interest is an asset of the remainderman's estate, and that if, instead, his interest were deemed defeasible, the property will more often go to blood relatives of the testator.

These respondents consider that sec. 231.18, Stats., would effect a reversion of Jerome's remainder interest to testator's heirs. They argue that the identity of the heirs should be determined as of the date the life tenant dies and the fund is available for distribution, although it is arguable that such identity should be determined as of the date of testator's death, or as of the date of the death of the remainderman.

These respondents rely upon statements in *Will of Walker.*[9] This court pointed out that the preference for absolute vesting originated in connection with conveyances of interests in land, and was based upon the desirability of a definitely ascertained placement of an interest as opposed to a suspension thereof pending some contingency. The court went on to say, at pages 190, 191:

[9] (1962), 17 Wis. (2d) 181, 116 N. W. (2d) 106.

"This rationale is still appropriate to support a preference for a vested, rather than a contingent, interest. However, because of the wide use of the trust device, this rationale does not lend any support to the preference for absolute rather than defeasible vesting. Therefore, it is doubtful if this rule should continue to have vitality when applied to beneficial interests in a trust where title is at all times vested in the trustee. This is in accord with the view expressed in the above-cited text that adherence to this preference in modern times 'is at least of doubtful validity in many situations.' Furthermore, this court has previously stated that the rule of construction in favor of an absolute vested interest is not to be resorted to where a contrary intent of a testator may be gathered from the language employed in a will."

The statement just quoted does not commit this court to a rule that defeasible vesting is to be preferred over absolute early vesting of a remainder interest in a trust, but does emphasize that in determining the intention of the testator both the concept of absolute early vesting and defeasible vesting of a remainder interest as beneficiary of a trust are available for consideration.

As pointed out by the learned trial judge, the McDowell will shows a dominant concern for his wife and for his only son. Robert Malcolm, to whom the estate was to go if Mrs. McDowell and Jerome died before testator, and Jerome left no issue, was not a blood relative of testator. Testator did not mention any of his collateral relatives. The consequences of absolute vesting in Jerome if he survived testator would be that his interest would pass to Jerome's heirs, legatees, assignees, or creditors. Defeasible vesting would cause his interest to pass, if he died before his mother, or perhaps even if he had survived his mother but died before reaching age forty, to heirs of testator. These may have been his mother and himself if heirship be determined at date of testator's death, or to collateral relatives of testator whose identity testator could not have determined, if the contention of these respondents be accepted.

We have no difficulty in determining that an absolute vested remainder was intended.

3. *Assignment of the trust fund to the executor of the will of Mrs. (McDowell) Harrison.* The judgment assigned the residue of the trust to First National Bank & Trust Company of Racine, executor of Mrs. Harrison's will.

The construction of the will, strictly speaking, consists of the determination that Jerome received an indefeasible vested remainder interest in the trust corpus and that no gift be implied to Robert Malcolm under the circumstances. The court has also determined that Jerome's interest passed by descent from him to his mother as sole heir-at-law.

The record suggests that Jerome was a resident of New York at his death. It does not appear whether any probate proceeding was had, but all parties who appeared in this matter seem to be fully satisfied that he died intestate, without issue, and unmarried, and that his mother was his sole heir. After this lapse of time claims of creditors, if any, are probably unenforceable. Presumably there has been no determination with respect to any tax liability which may have arisen by reason of the transfer of his interest at death. Possible tax liability may be the only question of any practical import, and the executor bank will doubtless see that this problem is properly resolved. The assignment to the bank may conceivably be subject to claims of persons not bound by the judgment, but under the circumstances we see no need for any modification of the judgment in that regard.

*By the Court.*—Judgment affirmed.