Estate of Connolly: McElligott, Appellant, v.
Murray, personal representative of the Estate of
Nellie J. Connolly, and others, Respondents.

*No. 248. Argued September 30, 1974.—Decided October 31, 1974.*
(Also reported in 222 N. W. 2d 885.)

442

444

For the appellant there were briefs by *Honeck, Mantyh & Arndt* of Milwaukee, and oral argument by *William J. Mantyh.*

For the respondents there was a joint brief by *Robert E. Lutz,* attorney, and *Paul L. Jaekels* of counsel, both of Milwaukee, for the respondents Milton T. Murray, Mary Sciors, Gertrude Walsh, Elizabeth Allessandro, Gerald Dahme, William Dahme and Carol Dahme, and by *Ralph W. Raasch,* of Milwaukee, guardian *ad litem,* for the respondents Delores Dahme and Michael Dahme; and oral argument for the respondent adult heirs at law by *Mr. Jaekels,* and oral argument for the respondent minor heirs at law by *Mr. Raasch.*

BEILFUSS, J. The issues are as follows:

1. In absence of specific language in the residuary clause or any ambiguity in the will read as a whole, and where the residuary legatee dies before the testatrix, may the court receive extrinsic evidence, based upon the circumstances of the case, to determine the probable intent of the testatrix so as to avoid intestacy?

2. Is the anti-lapse statute, sec. 853.27, which presumes a testamentary intent of substitution and legacies to persons who are, but not to persons who are not, related to the testatrix, unconstitutional?

3. Should the trial court have granted appellant's request to make an offer of proof?

4. Should appellant be allowed costs and attorney's fees out of the estate for both the trial and appeal regardless of the outcome of this appeal?

The principal contention of appellant McElligott is that the residue of Nellie Connolly's estate should not, by virtue of the fact that the named beneficiary predeceased the testatrix, pass to the heirs at law by intestate succession but should go to the children of the deceased named beneficiary. Such a holding by this court would, contrary to the assertions of the appellant, effect a significant change in Wisconsin law.

Three early decisions by this court might support appellant's position. In *Will of Reynolds* (1912), 151 Wis. 375, 138 N. W. 1019; *Will of Waterbury* (1916), 163 Wis. 510, 158 N. W. 340; and *Will of Nielsen* (1950), 256 Wis. 521, 41 N. W. 2d 369, this court considered extrinsic circumstances and ruled that the lapsed portions of the residuary bequests did not pass to the legal heirs under the laws of intestacy but were distributable to the other residuary beneficiaries. These cases can be distinguished on their facts from the case at bar but there is no reason to do so because their holdings have been subsequently repudiated by this court.

In *Will of Rosnow* (1956), 273 Wis. 438, 78 N. W. 2d 750, the testator's will specifically stated that neither his granddaughter, Noami, nor his son, Leonard, should share in any part of his estate. After giving a specific gift of $500 to a grandson, the will gave half of the residue to a daughter, Meta, and the other half to a son Arthur. Meta had predeceased the testator and the trial court held that her share of the residue should pass as intestate property, some of it thus passing to the specifically disinherited individuals. On appeal, this court affirmed, stating at pages 441, 442:

" '. . . No doubt this is not what testator intended, but the only way in which he could vary the rules of descent would be by making an effective gift at variance with these. This he did not do.' . . .

"We find no escape from the logic of that opinion if we are to refrain, as we ought, from writing a new will for the testator. . . ."

In *Estate of Mory* (1966), 29 Wis. 2d 557, 139 N. W. 2d 623, the testatrix's will, after making several specific gifts, left the residue of the estate to three sisters and a brother in equal shares, individually, not as a class. All four of these individuals predeceased the testatrix. The trial court concluded that the testatrix did not intend to die intestate as to any property and stated, " 'construing the will as a whole, it is apparent that the testatrix intended that lapsed residuary shares should be distributed to the other residuary legatees and to their issue by right of representation.' " The trial court thus held that the residue did not pass to all the heirs by intestacy but rather only to the heirs of the deceased residuum legatees by representation. On appeal this court reversed the trial court's decision and ordered that the property be distributed under the laws of intestate succession. We rejected the approach of *Reynolds, Waterbury* and *Nielsen, supra,* and reaffirmed *Rosnow, supra,* stating that it "laid to rest the confusion found in the early lapsed-legacy cases in determining the intent of the testator." *Mory,* page 564. The court concluded at page 565:

"There is nothing in the will to indicate an intent should the residuary gifts lapse. . . [T]he presumption against intestacy is of no effect when the testatrix has provided no indication, by the language used, of her intent in this situation. What she would have provided had she anticipated that all the residuary beneficiaries would predecease her is a matter for conjecture and

speculation. For us to presume her intent would amount to judicial will drafting, which we refuse to do."

In *Will of Wehr* (1967), 36 Wis. 2d 154, 152 N. W. 2d 868, the will provided for the creation of a testamentary trust, the corpus of which was the residue of the estate. Louise Wehr, Gretchen Wehr, C. Frederic Wehr and Edward R. Wehr were named lifetime beneficiaries of the trust and upon its termination five individuals were to receive $50,000 legacies from the corpus, with the balance being divided equally between an aunt, Clara Gebhardt, and a cousin, Carl Wehr. The will contained the following provision:

"I have heirs at law other than my said brothers Edward and C. Frederic and my said sisters Gretchen and Louise; but I do not consider it necessary to provide herein for any of my heirs at law other than the said Louise, Gretchen, C. Frederic, and Edward."

Clara Gebhardt died without issue prior to the testator and the question thus arose as to the proper disposition of the portion of the residue intended for her.

In holding that the property should pass by intestate succession to the testator's legal heirs at the time of his death, even though the will had specifically stated that the testator did not wish to provide for them, this court stated in *Wehr* at page 179:

" ' In construing a will the purpose of the court is to ascertain the intent of the testator as it is expressed in the full and complete will read in the light of the circumstances surrounding the testator at the time the will was executed. . . .'

" . . .

"However, before these rules of construction may be invoked, there must be language in the will which requires construction. . . . Once such language is found, it then might be proper to resort to extrinsic surrounding circumstances for the purposes of construction. There is no language in William E. Wehr's will which this court

can construe to ascertain testator's intent as to the disposition of the Gebhardt remainder in the event that it lapsed."

*Rosnow, Mory* and *Wehr, supra,* are controlling in the case at bar. Nellie Connolly's will gives no indication of any kind as to the intended disposition of the residue of her estate in the event of a lapse. The consistent holdings of *Rosnow, Mory* and *Wehr* are that the property must pass to the legal heirs by intestacy, notwithstanding the fact that some of the heirs may have been specifically disinherited. Any other result would amount to judicial will drafting, which this court has refused to do. The traditional refusal of the courts to consider extrinsic evidence as to the testator's intent, except when there is language in the will subject to several reasonable interpretations, is grounded in strong policy considerations:

"A will is a final and a sacred thing and unless its terms present an ambiguity, we are bound by the instrument itself. . . .

". . . There would be little security in the right to transfer property by will if the meaning could be changed by parol declarations of the testator to scriveners or witnesses. . . ." *Will of Tousey* (1951), 260 Wis. 150, 154, 50 N. W. 2d 454. *See also: Estate of Breese* (1959), 7 Wis. 2d 422, 429, 430, 96 N. W. 2d 712.

The appellant attempts to distinguish *Rosnow* and *Wehr, supra,* by noting that they each involved wills with gifts to more than one residuum legatee, only one of which predeceased the testator. The appellant suggests that the holdings in those cases were to prevent the other residuum legatees from getting the lapsed share and that this court follows a contrary rule when only one residuum legatee is named in the will. This is not correct. Appellant cites one case to support his position—*Estate of Mangel* (1971), 51 Wis. 2d 55, 186 N. W. 2d 276, which is distinguishable from *Rosnow, Mory, Wehr* and the case at

bar. In *Mangel,* the testator left the residue of his estate "to my beloved wife Irene E. Mangel and to her heirs and assigns forever . . . ." The only reason extrinsic evidence was allowed was to determine whether "and to her heirs and assigns forever" were words of limitation or words of substitution. Thus the distinguishing factor: The court had determined that there was language in the will which was ambiguous on its face.

There is no logical reason why this court should decide, as the appellant intimates we have already done, that a lapsed portion of the residue should pass by intestacy when there are surviving residuum legatees, but hold that there is no intestacy when there is only one named residuum legatee and that legatee has predeceased the testator. The case against intestacy is even stronger in the former situation where there are surviving residuum legatees who are identifiable objects of the testator's bounty as demonstrated by the will.

The commentators make no distinction between the two situations:

"Except as lapse is prevented by the . . . [anti-lapse] statute, a devise or bequest lapses if the beneficiary dies before the testator. . . .

". . . If the legacy which lapses is itself part of or the entire residuary legacy, nothing can prevent it from becoming intestate estate and going to the heirs of the testator, even though he has expressly stated in his will that they should have none of his property. . . ." 2 MacDonald, *Wisconsin Probate Law* (7th ed.), pages 337, 338, sec. 15.140.

". . . If there is one residuary legacy, and such legacy lapses, it passes to the heir or next of kin as intestate property if there is no gift over.

"If the residuum of the estate is given to two or more individually, and not as a class, and the gift to one of them lapses . . . . [i]t is now settled, by the weight of authority, that a lapsed part of the residuum does not itself pass into the remainder of the residuum, but that it passes to testator's next of kin as intestate property."

6 Page, *Wills* (Bowe-Parker rev.), pages 96, 97, sec. 50.18.

The appellant contends that the will in question is ambiguous because it contains a disinheritance clause and a residuary clause, and argues the presumption is raised that the testator intended not to die intestate. In *Will of Wehr, supra,* the will contained both of those features, but the court stated:

"Undoubtedly, the lawyer draftsman intended that no part of his client's estate pass through intestacy. However, such general intention, which hopefully may be attributed in every case to every lawyer who drafts a will, is not enough to warrant a strained construction of the will. . . ." Page 170.

"*Mory* also makes clear that the intent of a testator not to die intestate, manifested by his insertion of a residuary clause in the will, is not sufficient to effect a gift over of the lapsed portion of a residuary bequest . . . ." Page 178.

The *Will of Wehr, supra,* cites *Rosnow* to reaffirm that the existence of a disinheritance clause will not prevent a lapsed gift from passing by intestate succession in the absence of a gift over, even if the disinherited heirs will thus take.

It is next urged that the instant will creates a "gift by implication" of the residue to the children of Margaret McElligott. The appellant refers to language from *Estate of MacLean* (1970), 47 Wis. 2d 396, 405, 406, 177 N. W. 2d 874:

"The doctrine of a gift by implication does not result in a reformation of a will or correct an obvious mistake or an oversight by the draftsman. It is the ascertainment of the intention of the testator from all the words used in the will in the light of surrounding circumstances to fill in a void or an omission in the expressed terms of the will. Unless the clue to the intention is imbedded in the words of the will, the court cannot imply the gift to fill the ellipsis. . . ."

In this case there is clearly no language in the will which would indicate that the testatrix intended Margaret Mc-Elligott's children to take in the event she predeceased the testatrix. As stated in 4 Page, *Wills* (Bowe-Parker rev.), pages 119, 120, sec. 30.18:

"Since the courts endeavor to ascertain the intention of testator from his whole will rather than disjointed parts thereof and to enforce this intention if lawful when thus ascertained, it follows that it is possible for testator to dispose of property, not by any formal disposition in his will, but by necessary implication from his will taken as a whole. The presumption is very strong, however, against his having intended any devise or bequest which he has not set forth in his will. There must be a probability arising from the whole will that testator intended to make the bequest or devise, which he has not set forth expressly, so strong that it cannot be supposed that any other intention existed in the mind of testator.

"This intention must appear from the language which is used in the will. The fact that testator makes no specific provision for the case which has arisen, or that subsequent changes make it quite likely that he would have made a provision if he had thought that they would happen, does not justify the court in construing the will so as to make a gift by implication. . . ."

We conclude that this case does not present a proper instance for application of the doctrine of "gift by implication."

Finally, appellant urges this court to adopt what he refers to as "the doctrine of probable intent," which would allow a court to receive extrinsic evidence, irrespective of the presence or absence of an ambiguity, to ascertain the likely intention of the testator. The minority of courts that apply this doctrine, " '. . . [s]o far as the situation fairly permits. . . ascribe to the testator, "those impulses which are common to human nature, and . . . construe the will so as to effectuate those impulses." ' " *In re Estate of Burke* (1966), 48 N. J. 50,

63, 222 Atl. 2d 273. As further stated by that court, page 64:

". . . While a court may not, of course, conjure up an interpretation or derive a missing testamentary provision out of the whole cloth, it may, on the basis of the entire will, competent extrinsic evidence and common human impulses strive reasonably to ascertain and carry out what the testator probably intended should be the disposition if the present situation developed.

"This positive approach has particular significance in the case, as here, of an unprovided for contingency causing a failure in the complete disposition of the residue. . . ."

The adoption of this doctrine would open a great many wills to attack by disappointed relatives or friends of the deceased and would interject an element of uncertainty and lack of finality into the process of testamentary disposition. While the doctrine does have a certain attractiveness, in cases, as here, where an unforeseen consequence will result in the lapse of a residual gift and the distribution of such property, through intestate succession, to legal heirs whom the testator had specifically attempted to disinherit, the adoption of such a principle would require the reversal of a substantial body of Wisconsin case law.

This court, however, did modify the strict rule of disinheritance in *Estate of Farber* (1973), 57 Wis. 2d 363, 368, 204 N. W. 2d 478, by stating:

". . . In those cases where the intent to completely disinherit a certain heir or group of heirs is expressed beyond doubt, as evidenced by positive language stating which heirs are to take, and if any such heirs remain to take, the clearly expressed intention of the testator shall be recognized. . . ."

In that case testatrix had stated in her will, ". . . [I]t being my intention that all my estate shall be inherited

by those above named, kindred of the whole blood, and that none shall go to my brothers and sisters of the half blood. . . ." When a gift lapsed, this court applied the rule stated above and refused to allow it to pass by intestacy to all the heirs, but only to those of the full blood. The court carefully pointed out at page 368:

". . . However, we would emphasize that words of disinheritance or negative exclusion alone are not sufficient to prevent an heir at law from taking intestate property. . . ."

Adopting the "doctrine of probable intent" in this case would go a step beyond the *Farber* rule and would allow a court to independently ascertain the intent of the testator absent any language in the will which would be of guidance. Such a rule would bear the unpleasant appellation "judicial will drafting," and would contravene the holdings in *Rosnow, Mory* and *Wehr, supra.* We believe the majority rule as stated in *Rosnow, Mory* and *Wehr* is the better rule and decline to adopt the "doctrine of probable intent" as proposed by the appellant.

The appellant contends our anti-lapse statute is unconstitutional insofar as it excludes nonrelated persons upon the ground that the right to take property by inheritance or will is a natural right protected by the constitution which cannot be taken away or substantially impaired by the legislature.

Sec. 853.27, Stats., the anti-lapse statute, provides in pertinent part:

"**Rights of issue of beneficiary dying before testator (lapse).** (1) Unless a contrary intent is indicated by the will, if provision in the will is made for any relative of the testator and the relative dies before the testator and leaves issue who survive the testator, then the issue as represent the deceased relative are substituted for him under the will and take the same interest as he would have taken had he survived the testator."

If Margaret McElligott had been a relative of Nellie Connolly, the effect of this statute would have been that Margaret's children would have taken the residue of the estate. Appellant contends that the self-contained limitation of the statute's application to relatives is unconstitutional. His basis for this contention is a statement made by this court in *Nunnemacher v. State* (1906), 129 Wis. 190, 197, 108 N. W. 627:

". . . the right to take property by inheritance or by will is a natural right protected by the constitution, which cannot be wholly taken away or substantially impaired by the legislature."

It is obvious that the statute does not interfere with an individual's right to leave his property to whomever he pleases. Appellant recognizes that the anti-lapse statutes of this or any other state have never been held unconstitutional and that the court in *Nunnemacher, supra,* stated at page 202:

"It is true that these rights are subject to reasonable regulation by the legislature; lines of descent may be prescribed, the persons who can take as heirs or devisees may be limited, collateral relatives may doubtless be included or cut off, the manner of the execution of wills may be prescribed, and there may be much room for legislative action in determining how much property shall be exempted entirely from the power to will, so that dependents may not be entirely cut off. These are all matters within the field of regulation. . . ."

Still appellant persists in his contention; he suggests that the statute denies equal protection in that it arbitrarily and unreasonably creates two classes of beneficiaries. The classification is entirely reasonable and well-founded in public policy. It is not unreasonable to presume that, unless otherwise provided, the issue of relative-beneficiaries are objects of the testator's bounty and affection. Such a presumption in the case of nonrelated strangers to

the will, however, would be unrealistic. We conclude the anti-lapse statute as written is not unconstitutional.

The appellant also assigns as error the refusal of his offer to show the intent of the testatrix.

In *State ex rel. Schlehein v. Duris* (1972), 54 Wis. 2d 34, 39, 194 N. W. 2d 613, the court said:

"In most instances the trial court should permit an offer of proof either in question and answer form or by a statement of counsel, in the record, of what he believes the testimony would show. . . . However, we believe that there are exceptions to this general rule and in those instances offers of proof can be refused in the exercise of judicial discretion. A trial judge need not, in fact should not, permit offers of proof as to matters that are clearly immaterial, irrelevant, without proper foundation or by incompetent witnesses."

In this case the trial court properly excluded the testimony or evidence offered by the plaintiff to prove the intent of the testatrix upon the ground that it was immaterial and irrelevant. Clearly, the rule is that extrinsic evidence cannot be received to determine the intent of the testator unless, from a reading of the entire will, an ambiguity appears in the will itself.[1] There is no ambiguity in Nellie Connolly's will.

The appellant requests, regardless of the outcome of this appeal, that all the parties be allowed costs and reasonable attorneys' fees both at the trial level and upon appeal. In support of this request he cites *Estate of MacLean, supra,* where we stated at page 408:

"In the event of affirmance, the appellants asked that their attorney's fees and disbursements be paid out of the corpus of the trust as the attorneys for the executor and the two churches were. We agree. The costs and reasonable attorney's fees of all parties to this appeal at the trial level and on appeal should be paid out of the estate.

---

[1] *Will of Rosnow, Estate of Mory* and *Will of Wehr, supra.*

The appellants raised and were successful on an important question worthy of our consideration and a construction of the will was made by this court. *See Uihlein v. Uihlein* (1960), 11 Wis. 2d 219, 105 N. W. 2d 351, and *Davis v. Davis* (1907), 132 Wis. 54, 111 N. W. 503, 111 N. W. 1129."

In the *Uihlein Case, supra,* this court held at page 230:

"In *Davis v. Davis* (1907), 132 Wis. 54, 111 N. W. 503, 111 N. W. 1129, which involved an appeal in an action for construction of a testamentary trust, this court directed that the costs of appeal be paid out of the estate inasmuch as the appeal was taken in good faith and the questions presented were worthy of presentation to this court. We deem that such case is sufficient precedent for us to direct that the costs of all parties to this appeal be paid out of the trust estate because there is no question but that all parties to this appeal acted in good faith and the question presented is worthy of our consideration. Such costs shall include reasonable attorney fees. . . ."

We have no hesitancy in believing that both the action in the trial court and this appeal were brought in good faith; and that the issues presented were worthy of presentation to the trial court and this court and laudably presented. Further, the equities of the McElligott children are equal to or superior to those of the distant and unknown heirs of the testatrix. However, we have concluded we have no authority to order this allowance by virtue of the controlling statutes and our prior cases.

The statutory provisions relating to the awarding of costs and attorney's fees are:

"879.33 **Costs, when allowed; judgment for.** Costs may be allowed in all appealable contested matters in probate court to the prevailing party, to be paid by the losing party or out of the estate as justice may require; and when costs are allowed they shall be taxed by the register in probate after the notice required in ch. 271. When costs are allowed, the court shall render judgment therefor, stating in whose favor and against whom rendered

and the amount, and a list of the items making the amount shall be filed with the papers in the case. Costs shall not be taxed against a guardian ad litem, except as provided in s. 271.14."

"879.37 **Attorney fees in contests.** Reasonable attorney fees may be awarded out of the estate to the prevailing party in all appealable contested matters, to an unsuccessful proponent of a will if he is named as an executor therein and propounded the document in good faith, and to the unsuccessful contestant of a will if he is named as an executor in another document propounded by him in good faith as the last will of the decedent."

The appellant here was not a successful litigant, either in this court or the trial court, nor was he named executor in the will admitted to probate or any other will of Nellie Connolly. He is not, therefore, legally eligible to an award of his costs and attorney's fees from the corpus of the estate.[2]

There is, however, one statute or rule of court that can afford the appellant some relief. Sec. 251.23, Stats., states:

"251.23 **Costs in supreme court.** (1) DISCRETIONARY ITEMS. In the supreme court, excepting criminal actions, costs shall be in the discretion of the court. In any civil action or proceeding brought to the court by appeal or writ of error, the prevailing party shall recover costs unless the court shall otherwise order, and such costs, unless fixed at a lower sum by the court, shall be as follows: The fees of the clerk, $50 attorney's fees, the fees of the clerk below for transmitting and certifying the record, including the sum paid for necessary copies of the minutes of the reporter procured for record preparatory to an appeal or for approval of the transcript, and the sum paid for printing appendices and briefs, not exceeding $3 per page and in all not exceeding 150 pages."

---

[2] *See Estate of Alburn* (1964), 23 Wis. 2d 386, 127 N. W. 2d 56; *Estate of Phillips* (1940), 236 Wis. 268, 294 N. W. 824, 296 N. W. 608.

Upon the authority of this statute, and for the reasons stated above, in the exercise of our discretion we determine that no appeal costs shall be taxed by either party.

*By the Court.*—Order affirmed; no costs to be taxed.

ROBERT W. HANSEN, J. *(dissenting).* The sole goal in the transfer of property as directed by will is to carry out the expressed intent of the person who made the will. Ordinarily this requires no more than judicial compliance with the express directions of the will. In what this court termed the "mine run of cases," this involves no more than following the plain, unchallenged and explicit directions of the will.[1] However, there are three situations in which this cannot thus easily be done:

1. *Ambiguity.* Where there is language in a will which is unclear and requires judicial construction to determine its meaning, the court construes the will to resolve the ambiguity.[2]

2. *Mistake.* Where there is a mistake in a will, as in matters of identification of property or beneficiaries, the court may correct the mistake in order to reach an intended result.[3]

---

[1] *Estate of MacLean* (1970), 47 Wis. 2d 396, 401, 177 N. W. 2d 874, this court observing: "In the mine run of cases, . . . the final decree construes the will only in the sense it follows the plain, unchallenged and explicit commands of the will. Most lawyers and lay persons do not consider this a construction but rather a compliance with the express directions of the will. . . ."

[2] *Will of Wehr* (1967), 36 Wis. 2d 154, 168, 169, 152 N. W. 2d 868, where this court construed a will to find that the word "descendant," when used in a will, does not, in the absence of a very clear indication, mean heirs of a person or his collateral relatives.

[3] *Estate of Gibbs* (1961), 14 Wis. 2d 490, 499, 111 N. W. 2d 413, where this court, finding a specific bequest to an individual, identified by name and street address in the will, was made by mistake and determined that respondent, who had a different

3. *Omission.* Where there is a void or omission in the expressed terms of a will, the court may ascertain the intent of the testator and create a gift by implication to fill such void or omission.[4]

The general term, "construction of the will," is used to describe (1) the construing of a will to resolve an ambiguity; (2) the correction of a mistake in will;[5] and (3) the filling in of a void or omission by creating a gift by implication.[6] However, since there are in this state, somewhat different requirements for using each of these three approaches, we set forth, individually, the applicable rule as to each:

middle initial and lived at a different street address, was the legatee ". . . whom testators had in mind." *See also:* 4 Page, *Wills,* sec. 30.18, page 119, stating: "Since the courts endeavor to ascertain the intention of testator from his whole will rather than disjointed parts thereof and to enforce this intention if lawful when thus ascertained, it follows that it is possible for testator to dispose of property, not by any formal disposition in his will, but by necessary implication from his will taken as a whole. . . ."

[4] *Estate of MacLean, supra,* footnote 1, at pages 405, 406, where this court found that there was an omission to cover the contingency which subsequently arose and the court ascertained the intent of the testator and applied the doctrine of gift by implication to ". . . fill in a void or an omission in the expressed terms of the will. . . ."

[5] *Estate of Gibbs, supra,* footnote 3, at page 497, this court stating, as to its correcting a mistake as to named legatee not apparent from the four corners of the will: "Although the courts subscribe to an inflexible rule against reformation of a will, it seems that they have often strained a point in matters of identification of property or beneficiaries in order to reach a desired result *by way of construction.* . . ." (Emphasis supplied.)

[6] *Estate of MacLean, supra,* footnote 1, at page 406, stating that the doctrine of gift by implication is said to originate in *In re Donges's Estate* (1899), 103 Wis. 497, 501, 79 N. W. 786, and quoting as a guideline for creating such implied gift: " '. . . first, that in case of doubt *such construction* will be adopted as to support and give effect to the will, rather than to defeat it; . . .' " (Emphasis supplied.)

1. *Construction.* For construction of a will to resolve ambiguity, it is required that ". . . there must be language in the will which requires construction, . . ." [7] and the general rule for construing the will is: " 'In construing a will the purpose of the court is to ascertain the intent of the testator as it is expressed in the full and complete will read in the light of the circumstances surrounding the testator at the time the will was executed. . . .' " [8]

2. *Correction.* For correction of a mistake made in a will as to the identification of a specific legatee, this court held extrinsic evidence admissible as to intent, concluding: ". . . Where such details of identification are involved, courts should receive evidence tending to show that a mistake has been made and should disregard the details when the proof establishes to the highest degree of certainty that a mistake was, in fact, made." [9]

3. *Creation of gift by implication.* For the creation of a gift by implication to fill a void or omission in a will, there are three requirements in this state: (a) ". . . an omission to cover the contingency which subsequently arose, . . ." [10] (b) ". . . the ascertainment of the intention of the testator from all the words used in the will in the light of surrounding circumstances to fill in a void

[7] *Will of Wehr, supra,* footnote 2, at page 179.

[8] *Id.* at page 179, quoting *Estate of Breese* (1959), 7 Wis. 2d 422, 425, 426, 96 N. W. 2d 712. (*Note:* In *Breese,* the dispute was as to the meaning of the word "issue" as used by testatrix in her will and whether it included the adopted children of her deceased brother.)

[9] *Estate of Gibbs, supra,* footnote 3, at page 499. 1 Page, *Wills,* sec. 13.9, page 679, gives the general rule on correcting mistakes in wills: "if a mistake in expression can be cured by a construction of the terms of the will when read in the light of the surrounding circumstances, and aided by admissible evidence, the court which has the power to construe the will, will give such relief. . . ."

[10] *Estate of MacLean, supra,* footnote 1, at page 405.

or an omission in the expressed terms of the will. . . ." [11]
(c) that the ". . . clue to the intention is imbedded in the words of the will . . . ." [12]

The situation in the case before us fits squarely into *MacLean* category of a void or omission in a will and meets, with margin to spare, the three *MacLean* tests or requirements for the creation here of a gift by implication.

*Void or omission.* What we have in the case before us is a void or omission to cover a contingency which subsequently arose. Clearly and unmistakably, the will provides that the bulk of the estate is devised by the testatrix to her friend, Margaret McElligott, as residuary legatee. Just as clearly and unmistakably, the testatrix provided that her living relatives were not to receive anything at all. However, the will did not specify who was to receive the residuary legacy if friend Margaret died before the testatrix did. This is not a case, as in *Wehr*, of construing a word or term used in a will. [13] It is not a case of mistake made, as in *Gibbs*, as to the middle initial and street address of a named legatee. [14] It is, exactly as in *MacLean*, a void or omission to cover a particular contingency. In *MacLean*, the court cited and followed an earlier Wisconsin case in which ". . . The will omitted to state who should receive the trust assets if the daughter survived the five years. . . ." [15] In our case here, the will omitted to state who should receive the bulk of the estate if the named residuary legatee, Margaret McElligott, predeceased the testatrix. The ailing testatrix, late in her seventies when she executed her will, may well

[11] *Id.* at pages 405, 406.

[12] *Id.* at page 406.

[13] *Will of Wehr, supra,* footnote 2.

[14] *Estate of Gibbs, supra,* footnote 3.

[15] *Estate of MacLean, supra,* footnote 1, at page 407, citing the creation of a gift by implication in *Will of Schneider* (1955), 268 Wis. 610, 68 N. W. 2d 576.

have expected that she, and not her younger and healthier friend, would be the first to shuffle off this mortal coil. But, in any event, the will contains no provision providing for the contingency which occurred. So there is what *MacLean* terms and requires for the creation of a gift by implication: ". . . a void or an omission in the expressed terms of the will. . . ." [16]

*Clues imbedded in will.* For the creation of a gift by implication, clues to the intention of the testator as to a void or omission in a will, must be ". . . imbedded in the words of the will . . . ." [17] Such clues to intent are easily located in the express provisions of the will here. One such clue is the specific disinheritance of living relatives. [18] Such positive language in a will is not to be disregarded. [19] The bequest to friend Margaret being a residuary legacy is another clue. Such expressed desire not to die intestate, while it is not, alone, sufficient to effect a gift over, [20] is a factor given weight in *MacLean*. [21]

---

[16] *Id.* at page 406.

[17] *Id.* at page 406.

[18] Paragraph 7, Last Will and Testament of Nellie J. Connolly, reading: "Seventh: I am cognizant of the fact that I have two living relatives, namely, May Cyers, a niece and Mary Walsh, a grand niece, both of Chicago, Illinois, but it is my wish and desire not to give, devise or bequeath anything to them." [*Note:* There were five living relatives.]

[19] *Estate of Farber* (1973), 57 Wis. 2d 363, 368, 204 N. W. 2d 478, this court stating: ". . . In those cases where the intent to completely disinherit a certain heir or groups of heirs is expressed beyond doubt, as evidenced by positive language stating which heirs are to take, and if any such heirs remain to take, *the clearly expressed intention of the testator shall be recognized.* . . ." (Emphasis supplied.)

[20] *Will of Wehr, supra,* footnote 2, at page 178, stating: ". . . the intent of a testator not to die intestate, manifested by his insertion of a residuary clause in the will, is not sufficient to effect a gift over of a lapsed portion of a residuary bequest to the other residuary legatees." Summarizing holding in *Estate of Mory* (1966), 29 Wis. 2d 557, 139 N. W. 2d 623.

That case also holds that there is a presumption of intent to completely distribute an estate by will.[22] Another clue or factor as to intent, imbedded in this will, is the wording of the bequest of nearly all of the estate to the residuary legatee.[23] The nature, degree and duration of the friendship involved are clearly set forth in the will. Here is no minor bequest to a valued employee or one of a series of bequests to nieces or grandnieces. Almost all of the estate is bequeathed to a friend, further identified as one who "has been most kind and helpful for the past many years." While clues as to intent are needed, clues there are, imbedded in this will, as to the intent of the testator to fill the void or omission in the will.

*Surrounding circumstances.* With a void or omission present, and clues to intent located imbedded in the will, the *MacLean* requirements for creating a gift by implication direct that any ascertainment of the intent of the testatrix be made from ". . . all the words used in the will in the light of surrounding circumstances . . . ."[24]

---

[21] *Estate of MacLean, supra,* footnote 1, at page 407, this court stating: ". . . He [the testator] did not intend an intestacy as he attempted to give all his estate in trust; . . ."

[22] *Id.* at page 406, giving as a guideline to ascertain intent of testator in gift by implication situations, this rule: " '. . . second, that a testator is presumed to have intended a complete distribution of his estate, and a construction tending to that end will be preferred to one which results in intestacy as to any part. . . .' " *See also: Estate of Farber, supra,* footnote 19, at page 370, stating: " '. . . it is to be presumed that he intended a complete distribution of his estate, and a construction tending to that end will be preferred to one which results in intestacy as to any part.' " Quoting *Estate of Cordes* (1957), 1 Wis. 2d 1, 11, 82 N. W. 2d 920.

[23] Paragraph 6, Last Will and Testament of Nellie J. Connolly, reading: "Sixth: I give, devise and bequeath the rest and residue of my estate to Mrs. Robert J. McElligott (Margaret), 825 East Kensington, Shorewood, Wisconsin, who has been my friend and has been most kind and helpful for the past many years."

[24] *Estate of MacLean, supra,* footnote 1, at page 406.

The intent to be ascertained is the intent expressed ". . . in the full and complete will read in the light of the circumstances surrounding the testator at the time the will was executed." [25] What were the circumstances surrounding the testatrix when she executed this will? She was in her late seventies, not in good health, going in and out of nursing homes until her death at the age of eighty-three. The principal and residuary legatee, Margaret McElligott, at the time the will was executed, was sixty-five years of age and widowed. The record in this case establishes that the testatrix had developed a close relationship with the Robert J. McElligott family at least as early as 1940. She was a regular guest at the McElligott home on holidays such as Christmas, Thanksgiving and Easter. During her visits to the McElligott home she got to know the McElligott children—William, Marne and Jeanne—very well, and had become very fond of them. William and Jeanne resided in Milwaukee, visited the testatrix often, including visits to her at the nursing home. As to the disinheritance of living relatives, the record reveals that the testatrix told her attorney when the will was drafted that she had not seen either of the two living relatives for a long time and that she had tried to contact them without any response. As to her leaving the bulk of the estate to her friend Margaret as residuary legatee, the testatrix told her attorney that she wished to do just that ". . . because she [Margaret] had been a very good friend of hers; had been kind to her and had taken care of her during the time that she needed help from her and had always been her friend, her very close friend." It is clear that every surrounding circumstance supports and strengthens the clues to the intent of the testatrix found imbedded in the will.

[25] *Will of Wehr, supra,* footnote 2, at page 179, quoting *Estate of Breese, supra,* footnote 8, at pages 425, 426.

*Determination of intent.* Given these clues to intention, imbedded in this will, and these surrounding circumstances supporting and strengthening such clues to intent, the writer would find the conclusion compelled that this testatrix intended that the children of her friend Margaret should be substituted as residuary legatees should their mother predecease the testatrix. There is no way to read all of the words of this will, full and complete, in the light of the circumstances surrounding the testatrix when the will was written, and come to any other conclusion. In reaching such ascertainment of the intention of the testatrix, meeting the requirements for so doing prescribed in *MacLean*, the writer gives weight to the specific disinheritance paragraph as to living relatives in the will, the naming of a residuary legatee and the presumption against intending intestacy, and the bequeathing of nearly all of the estate to a close and personal friend for many years, with surrounding circumstances confirming that the fondness and friendship involved in such residuary bequest included the children of the friend named as residuary legatee.

*Gift by implication.* The ascertainment of such intent on the part of the testatrix here, derived from all of the words of the will read in the light of the circumstances surrounding such testatrix at the time of the making of the will, warrants the creation here of a gift by implication to the surviving children of the residuary legatee of the legacy bequeathed to their mother in the will. Such gift by implication, *MacLean* holds, " '. . . may be presumed wherever the conclusion is irresistible that the testator so intended it.' " [26] The writer finds such conclusion irresistible here. The gap or void in the will here is " '. . . an omission to state that which was in the testa-

[26] *Estate of MacLean, supra,* footnote 1, at page 406, quoting *In re Donges's Estate, supra,* at page 501.

tor's mind and intended.' " [27] Creation of such gift by implication places the children of this residuary legatee in the same position they would, by statute, have been placed if their mother had been a relative of the testatrix.[28] Exactly as was done in *MacLean*, the gift by implication here is based on ". . . the ascertainment of the intention of the testator from all the words used in the will in the light of surrounding circumstances to fill in a void or an omission in the expressed terms of the will. . . ." [29] The case or factual basis for creating a gift by implication in the case before us appears to this writer even clearer and stronger than was the situation in *MacLean*. Not to do so in the case we have before us appears to the writer to come close to rejecting the doctrine of gift by implication, and that this court ought not do and has refused to do.[30]

---

[27] *Id.* at page 407, quoting trial court finding as upheld in *Will of Schneider* (1955), 268 Wis. 610, 68 N. W. 2d 576.

[28] *See:* Sec. 853.27 (1), Stats., the anti-lapse statute, providing: "(1) Unless a contrary intent is indicated by the will, if provision in the will is made for any relative of the testator and the relative dies before the testator and leaves issue who survive the testator, then the issue as represent the deceased relative are substituted for him under the will and take the same interest as he would have taken had he survived the testator."

[29] *Estate of MacLean, supra,* footnote 1, at pages 405, 406, also quoting with approval the justification for creation of gifts by implication contained in *In re Donges's Estate, supra,* at page 501, stating: " '. . . courts often find themselves constrained to discover an intention to give, by the will, that which is not in fact given by express words, but which, it is clear from the other bequests and devises, it was the intention of the testator to give, as being so clearly implied from the gifts in fact made and the purpose of the will that silence can signify only an omission to state that which was in the testator's mind and intended. These are called devises or bequests by implication. . . .' "

[30] *Id.* at page 408, stating of intestacy holdings in *Will of Mc-Dowell* (1966), 31 Wis. 2d 519, 143 N. W. 2d 506, and *Will of Wehr, supra,* footnote 2: ". . . The reliance on these cases is misplaced. In those cases the court did not reject the doctrine of a

The writer would reverse, holding that a gift by implication entitles the children of the deceased residuary legatee to the share of the estate bequeathed to their mother by this will.

I am authorized to state that Mr. Justice LEO B. HANLEY joins in this dissent.

gift by implication but could not find in the will an intention of the testator to make a gift under the circumstances which developed and thus an intestacy resulted. In the case at bar we think the conclusion is irresistible that the testator did intend the churches to be the beneficiaries of the trust if the estate exceeded $20,000 after his sister's death, both when she predeceased him and when she survived him, and no intestacy resulted from the omission to state the latter expressly in paragraph two of the will."